Robert J. BESHARA, Gordon Coleman and Nedra Cheney, Appellants,

v.

SOUTHERN NATIONAL BANK, John L. O'Brien, William Eric Culver, Blevins & Sordahl, Inc., Paul Blevins, Gable & Gotwals, Inc., and Ronald N. Ricketts, Appellees.

No. 83950.

Supreme Court of Oklahoma.

July 16, 1996.

Rehearing Denied Dec. 20, 1996.

John D. Boydston, Eufaula, C. Jack Maner, Mallie M. Norton, Tulsa, for Appellants.

Ronald N. Ricketts, Kari S. McKee, G. Lawrence Fox, Tulsa, for Appellees.

KAUGER, Vice Chief Justice:

The questions presented for certiorari are: 1) whether the trial court erred when it granted the Bank's demurrer to the appellant's evidence of wrongful dishonor; 2) whether the trial court erred when it dismissed the appellant's other alleged alternative theories of recovery; and 3) whether the trial court erred when it dismissed the appellant's counterclaim without allowing the appellant an opportunity to respond to the appellees' motion to dismiss. We find that: 1) under the facts presented, the trial court erred by failing to submit the wrongful dishonor claim to the jury; 2) the appellant has stated a viable claim for the alternative theories of breach of good faith and conversion, but the breach of fiduciary duty claim was properly dismissed; and 3) under the facts presented, the appellant should have been given an opportunity to respond to the appellees' motion to dismiss his counterclaim.

## FACTS

In the early 1980's, the appellant, Robert J. Beshara (appellant/Beshara) met Betty J. Mitchell (Mitchell), an assistant cashier with the appellee, Southern National Bank (Southern National/the Bank) in Tulsa, Oklahoma. Shortly thereafter, Beshara and Mitchell began a social relationship. In August of 1986, Beshara opened a checking account and began banking with Southern National. As a matter of convenience, Beshara had Mitchell conduct virtually all of his banking business by having her make deposits to and withdrawals from his checking account at the Bank.

However, a few days after he opened his checking account at Southern National, Mitchell, without Beshara's authorization or knowledge, changed the address on his account to her home address in Sand Springs and added her name as an authorized signer on the account. Subsequently, she began embezzling money from the account. When Beshara's monthly statements were mailed to Mitchell's residence, she altered them so that they would conform with his actual transactions in the account and she sent him the false statements.

Mitchell periodically embezzled money from Beshara's checking account until late December of 1988, when another employee of Southern National, while conducting a routine internal audit, discovered a large transfer of money from Beshara's account into another account. On January 9, 1989, with Beshara's checking account showing a balance of $32,425.37, Southern National placed a hold on the account to conduct an internal audit to determine the correct account balance. The Bank insists that Beshara came

into the bank near the end January looking for Mitchell, and that it informed him of her tampering with his account and requested copies of all documents which he possessed pertaining to the account.[1] Sometime later, Beshara ended his relationship with Mitchell.

On March 24, 1989, Beshara's attorney wrote the Bank, demanding that Beshara's checking account be released from the hold and that the proper account balance be restored. The Bank insisted that it had not completed its audit. In April of 1989, Beshara informed the Bank that he needed some of his money to pay his income taxes which were due. The Bank offered to loan Beshara the money to pay his taxes, but Beshara refused the offer.[2]

Five months after Southern National first placed its hold on Beshara's checking account, Beshara wrote two checks against the account.[3] According to Beshara, his attorney advised him to write the checks to determine if the Bank continued to hold his checking account and, if so, to provide him with written evidence that the Bank was doing so. Southern National refused to honor the checks, marked them "refer to maker," and returned them to their respective payees.

On August 10, 1989, Southern National mailed a proof of loss claim to its insurance company requesting reimbursement under a fidelity bond for the losses it suffered as a result of Mitchell's embezzlement. The claim included a specific and detailed report which explained how Mitchell's embezzlement occurred and how much money should have been in Beshara's account. **Hartford issued Southern National three checks for reimbursement of its losses as a result of Mitchell's embezzlement; one for $50,-000.00 on February 16, 1990, a second on June 29, 1990, for $145,897.64 and another check for $5,000.00 on October 15, 1990, nearly two years before it finally restored the funds in Beshara's account.[4]**

Beshara sued the Bank on August 17, 1989.[5] Seeking actual and punitive damages, Beshara asserted that the Bank acted in bad faith, wrongfully refused to honor the checks he wrote on his account, and converted his money.

Upon Southern National's motions, the trial court found in separate rulings that: 1) "a 'conversion' action will not lie in this case as the relationship between a depositor and a bank is that of debtor and creditor;" 2) Beshara could not rely on his other theories of recovery; and 3) "issues of [f]act still exist on recovery based on wrongful dishonor."

On April 2, 1992, Southern National filed a counterclaim against Beshara and a third party petition against the payees of the checks he wrote, alleging a civil claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.A. §§ 1961 et

---

1. Beshara provided the Bank with copies of the phony statements which Mitchell had sent him as well as his own estimate that the proper balance in the account should have been nearly $104,-000.00. After the Bank began its audit, it requested from Beshara copies of all of his payroll checks which he deposited into the checking account. Beshara did not provide the Bank with copies of the checks until his deposition was taken in 1991.

2. The terms of the Bank's loan provided that if it determined the proper account balance included an amount of money equivalent to the loan, Beshara could keep the money with no interest due on the loan.

3. Beshara actually wrote three checks on the account. The first check, dated May 8, 1989, was made payable to Nedra Cheney (appellant/Cheney), the secretary of Beshara's lawyer, for $5,682.00. The second check was made pay-able to Gordon Coleman (appellant/Coleman), a golfing buddy of Beshara, for $4,782.00. The third check was written on May 12, 1989, and it was made payable to Jane Self, an acquaintance of Beshara's lawyer, for $375.00. However, Jane Self was not made a party to this cause.

4. In July of 1990, the Bank notified Beshara's attorney that Beshara's account would be credited in the amount of $113,724.77, which included $9,307.47 in accrued interest in exchange for a release of liability from Beshara, but Beshara refused to sign the release. Finally in September of 1992,—over three and one half years after placing its original hold on Beshara's checking account—the Bank, still insisting that it had not completed its auditing of the account, sent Beshara a check for his account balance with interest.

5. Beshara also initially named Mitchell and the Hartford Insurance Company, however, he later dismissed his claims against Mitchell and Hartford and they are not parties here.

seq., and alleging claims for fraud and conspiracy. The Bank asserted that Beshara and the payees embarked upon a scheme to induce the Bank to act to its detriment by dishonoring the checks. Beshara and the payees responded with a counterclaim and cross-petition against the Bank, alleging abuse of process and intentional infliction of emotional distress. Finally, in September of 1992,—over three and one half years after placing its original hold on Beshara's checking account—the Bank, still insisting that it had not completed its auditing of the account, sent Beshara a check for his account balance with interest. The trial court ordered the wrongful discharge claims and the counterclaims tried separately. On May 4, 1994, the trial court granted Southern National's motion in limine, which excluded from the trial any evidence, argument or other reference to the Hartford fidelity bond, or any other theory of liability other than wrongful dishonor.

From June 14, 1994, to June 17, 1994, Beshara's wrongful dishonor claim against Southern National was tried to a jury. At the close of Beshara's evidence, the Bank demurred to the evidence and moved to dismiss the wrongful dishonor claim. The trial court, stating from the bench that Beshara suffered no damages from the Bank's refusals to honor the checks, granted the Bank's motion to dismiss the wrongful dishonor claim and entered judgment in favor of Southern National and against Beshara. The trial court announced that it would entertain oral motions concerning summary judgment concerning the counterclaims.

Southern National dismissed its counterclaim and third party petition against the appellants with prejudice, and it moved to dismiss the appellants' counterclaim and cross-petition for abuse of process on the grounds that the pleadings failed to state a

claim upon which relief could be granted. The trial court treated the motion to dismiss as a motion for summary judgment and granted summary judgment in favor of the Bank and against the appellants. Beshara, Coleman and Cheney appealed and on September 5, 1995, the Court of Appeals Division 3, in an unpublished opinion, affirmed the trial court. We granted certiorari on February 27, 1996.

## I.

**THE APPELLANT'S ATTEMPT TO RECOVER DAMAGES AGAINST THE BANK CENTER AROUND TWO IMPORTANT FACT SCENARIOS: 1) THE FACTS SURROUNDING THE ALLEGED WRONGFUL DISHONOR; AND 2) THE FACTS SURROUNDING THE BANK'S CONDUCT APART FROM ITS REFUSAL TO PAY THE CHECKS.**

From the outset we note that Beshara does not appear to dispute that the Bank was at least initially justified, as a result of Mitchell's embezzlement, in placing a temporary hold on, or freezing the funds in his checking account, to investigate Mitchell's actions in his and other accounts and to determine the proper balance of his account. **Rather, the gravamen of his allegation is: 1) that the Bank placed a hold on his account in January of 1989, and after he made repeated demands to have his account restored, it dishonored the checks he wrote in early May of 1989; and 2) even if the Bank was justified in refusing to honor the checks, at some point in time, it determined from its investigation that his account should have had a balance of approximately $104,00.00, yet the Bank would not restore his account.[6]**

6. Rules on pleading both at trial and at the appellate levels have been liberalized to allow the courts to focus its attention on the substantive merits of the dispute rather than upon procedural niceties. *Markwell v. Whinery's Real Estate, Inc.,* 869 P.2d 840, 842 (Okla.1994). Under our liberalized pleading code, although double recovery may not be permissible, parties are allowed to set forth statements of claims alternatively or hypothetically and rely on inconsistent theories rather than to elect a single legal theory. *Howell*

*v. James,* 818 P.2d 444, 447 (Okla.1991); See, 12 O.S. Supp.1987 § 2008(E)(2). We note that it appears that the Bank argues that Beshara should be precluded from asserting any errors relating to any of his alternative theories other than wrongful dishonor because he allegedly did not seek reconsideration of the trial court's order which limited his cause of action to wrongful dishonor and because on the day of trial the trial judge informed Beshara that he could dismiss his

#### a.

**The trial court erred by failing to submit the wrongful dishonor claim to the jury.**

Beshara argues that the Bank's failure to pay the checks he wrote in May of 1989, was wrongful dishonor and that the trial court erred when it granted the Bank's demurrer to his evidence and dismissed his wrongful dishonor claim. The Bank counters that the trial court did not err because: 1) the evidence established that the Bank was justified in placing a hold on Beshara's checking account; and 2) Beshara failed to prove any evidence of damages.

■ The test of a demurrer to the plaintiff's evidence requires both the trial court and the reviewing tribunal to accept as true all of the plaintiff's evidence and its reasonable inferences, and to disregard conflicting evidence favorable to the defendant.[7] A demurrer to the plaintiff's evidence should be sustained only when there is an entire absence of proof to show any right of recovery.[8]

■ Title 12A 1981 § 4–402 of the Uniform Commercial Code relates to a bank's liability to its customer for wrongful dishonor. Section 4–402 provides:

"A payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item. When the dishonor occurs through mistake liability is limited to actual damages proved. If so proximately caused and proved damages may include damages for an arrest or prosecution of the customer or other consequential damages. Whether any consequential damages are proximately caused by the wrongful dishonor is a question of fact to be determined in each case." [9]

Title 12A Supp.1988 § 4–104(1)(h) defines an item as "any instrument for the payment of money even though it is not negotiable but does not include money." [10] A dishonor is wrongful if done in an unjustified, unfair, or wrong manner which is contrary to justice.[11] Wrongful dishonor excludes any permitted or justified dishonor.[12]

In *Shaw v. Union Bank & Trust Co.*, 640 P.2d 953, 955–56 (Okla.1981), this Court, in

lawsuit and refile it. However, we find the Bank's argument is without merit. The record reflects that Beshara continually attempted to assert his alternative theories of recovery and to present evidence relating to those theories both prior to and at the time of trial, but the trial court limited his cause of action to wrongful dishonor.

7. *Gay v. Hartford Underwriters Ins. Co.*, 904 P.2d 83, 86–87 (Okla.1995); *Hampton v. Hammons*, 743 P.2d 1053, 1057 (Okla.1987); *Maule v. Indep. School Dist. No. 9*, 714 P.2d 198, 202 (Okla. 1985). Under this standard, we need not consider any of the Bank's evidence that it was justified in placing a hold on Beshara's checking account or that it was justified in continuing to withhold his funds. That is precisely the question for the jury to answer after it considers all of the evidence presented by both parties.

8. *Hampton v. Hammons*, see note 7, supra; *Boyles v. Oklahoma Natural Gas Co.*, 619 P.2d 613, 618 (Okla.1980); *Martin v. Stratton*, 515 P.2d 1366, 1368 (Okla.1973).

9. The 1981 version of § 4–402 was in effect when the Bank refused to pay the checks written by Beshara in May of 1989. However, this statute was amended in 1991, eff. January 1, 1992. The current version provides in pertinent part:

"(a) Except as otherwise provided in this article, a payor bank wrongfully dishonors an item if it dishonors an item that is properly payable, but a bank may dishonor an item that would create an overdraft unless it has agreed to pay the overdraft.

(b) A payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item. Liability is limited to actual damages proved and may include damages for arrest or prosecution of the customer or other consequential damages. Whether any consequential damages are proximately caused by the wrongful dishonor is a question of fact to be determined in each case...."

10. The current version of this section defines an item as: "an instrument or a promise or order to pay money handled by a bank for collection or payment. The term does not include a payment order governed by Article 4A of this title or a credit or debit card slip."

11. *Landrum v. Security Nat. Bank of Roswell*, 104 N.M. 55, 716 P.2d 246, 248 (1985); Holland, "An Analysis of the Legal Problems Resulting From Wrongful Dishonors," 42 Mo.L.Rev. 507 (1977). Section 1 of the 1981 Oklahoma Comments to Section 4–402 states that "dishonor of a properly payable item is wrongful dishonor."

12. *Shaw v. Union Bank & Trust Co.*, 640 P.2d 953, 955 (Okla.1981).

addressing the nature of a wrongful dishonor claim and the types of damages which are potentially recoverable, recognized that ordinarily the relationship between a bank and its customer is contractual and that recovery is founded upon a breach of the depositor's contract.[13] Nevertheless, we found that a wrongful dishonor claim is governed by § 4–402 of the Uniform Commercial Code and that it is not classified as either an action in tort or an action in contract. We also held that the general rule that the relationship between a bank and a depositor is contractual in nature does not apply to the special situation of wrongful dishonor. Under § 4–402, a bank is liable for damages proximately caused by the wrongful dishonor of an item—the measure of damages is not limited to the face value of the item, but to the injury sustained by the depositor, including punitive damages if the wrongful dishonor action is not based on a mistake. In *Shaw*, this Court said that:

> "Appellant here alleges in his petition that appellee bank 'acted in a wrongful, malicious, and grossly negligent manner in refusing to release the funds.' Appellant should be given the opportunity to prove these allegations.
>
> Therefore, we hold the trial court erred in sustaining defendant's motion to strike the allegations of consequential and punitive damages allowable under U.C.C. § 4–402 in plaintiff's allegations."

■ Here, like the plaintiff in *Shaw*, Beshara alleged that the Bank wrongfully, wilful-ly, and maliciously refused to honor the checks he wrote in May of 1989, and that he suffered damages which included monetary loss, loss of use of his money, embarrassment, humiliation, and emotional distress. At trial, Beshara presented evidence showing that: 1) at the time the account was frozen it had a balance of $32,425.37; 2) he informed the Bank that his actual balance should have been approximately $104,000.00; 3) he needed the money in his account to pay his income taxes which were due in April of 1989; 4) he had to sell a coin collection at approximately $8,300.00 below value in order to pay the income taxes; 5) 90 days was a commercially reasonable length of time in which the Bank should have completed its investigation to determine the amount of funds which actually belonged in the account; and 6) he was embarrassed and humiliated and he suffered emotional distress as a result of the lengthy hold on his account. Accepting as true all of Beshara's evidence and its reasonable inferences, while disregarding conflicting evidence favorable to the Bank,[14] we cannot say that there was an entire absence of proof to show any right of recovery under 12A O.S.1981 § 4–402. Whether the Bank withheld Beshara's funds for a commercially reasonable length of time, whether it wilfully or intentionally dishonored the checks, or whether any damages were proximately caused by the dishonor is a question of fact for the jury.[15] Consequently, the trial court erred in refusing to submit the wrongful dishonor claim to the jury.[16]

**13.** If the action were merely contractual, the damages recoverable would be governed by 23 O.S.1981 § 22, which limits recovery to the amount due by the terms of the obligation to pay money with interest. Title 23 O.S.1981 § 22 provides:

> "The detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation, with interest thereon."

The current version remains unchanged.

**14.** *Gay v. Hartford Underwriters Ins. Co.*, see note 7, supra; *Hampton v. Hammons*, see note 7, supra; *Maule v. Indep. School Dist. No. 9*, see note 7, supra.

**15.** Title 12A O.S.1981 § 4–402, page 8, supra. See also, *Yacht Club Sales & Serv. Inc. v. First*

*Nat. Bank of North Idaho*, 101 Idaho 852, 623 P.2d 464, 472 (1980); *Loucks v. Albuquerque Nat. Bank* 76 N.M. 735, 418 P.2d 191 (1966).

**16.** The Bank, pointing to Beshara's testimony at trial and in his deposition, insists that Beshara suffered no damages as a result of the Bank's dishonor of the checks. Considering all of his testimony as a whole, it appears that Beshara testified that he did not suffer damages which are typical to a wrongful dishonor claim such as injury to credit, injury to reputation, loss of business, or damages resulting from a prosecution for the dishonored checks. However, he did present evidence on other consequential damages such as the loss of use of his funds and mental pain and suffering caused by both the dishonor and the allegedly wrongful hold on his account. We find that this evidence was sufficient, under these circumstances, to overrule the

## b.

## The appellant has stated viable claims for the alternative theories of breach of good faith and conversion, but the breach of fiduciary claim was properly dismissed.

Apart from the allegations of wrongful dishonor, Beshara alleged that the Bank's conduct—regarding its refusal to restore his account even by August of 1989, when the Bank filed its report of the embezzlement to its insurance company—warrants punitive damages. His primary evidence is the report the Bank filed with its insurance claim which tends to show that the Bank had in fact completed its investigation, yet continued to refuse to restore his account.

■ Beshara attempted to admit into evidence the Bank's report which it submitted with its proof of loss claim to Hartford. Upon the Bank's motion, the trial court excluded the proof of loss claim from evidence, relying on 12 O.S.1981 § 2411 which provides:

"Evidence of the existence of liability insurance is not admissible upon the issue of negligence or wrongful action. This section does not require the exclusion of evidence of liability insurance where the question of possession of liability insurance is itself an element of the action, or when offered for another purpose, including proof of agency, ownership, control, bias or prejudice of a witness."

Clearly, under § 2411, proof of liability insurance is generally inadmissible.

■ If evidence is offered for other relevant purposes, it may be admitted,[17] and the decision of the trial court regarding admissibility of evidence will not be overturned unless it is shown that the court abused its discretion.[18] Here, when the Bank finished the report is unknown, but it was filed in August of 1989, three months after the checks were dishonored. Accordingly, we agree with the trial court that the report would not be relevant to the issue of a wrongful dishonor which occurred in May of 1989.

Beshara also contends that the report is not only relevant, but that it is critical to Beshara's other theories of liability because it supports his allegations that the Bank refused to release the account funds even though it had knowledge of the proper amount of the funds which should have been in the checking account.[19] Although this use of the report would likely be more probative than prejudicial,[20] that issue need not be decided until Beshara tries his claims concerning the Bank's conduct after the alleged wrongful dishonor.

Beshara argues that the Bank, **besides merely refusing to honor the checks he wrote, was so outrageous in its conduct concerning its withholding of the checking account funds and its continual refusal to**

Bank's demurrer and to submit the cause to the jury for a determination of whether Beshara suffered any damages which were proximately caused by the alleged wrongful dishonor. 12A O.S.1981 § 4-402, page ——, supra; *Shaw v. Union Bank & Trust Co.*, note 12, supra.

**17.** Title 12 O.S.1981 § 2401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Title 12 O.S.1981 § 2402 provides:

"All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Oklahoma, by statute or by this Code. Evidence which is not relevant is not admissible."

The current version of these statutes remains unchanged.

**18.** *James v. State Farm Mut. Auto. Ins. Co.*, 810 P.2d 365, 371 (Okla.1991); *Nail v. Oklahoma Children's Memorial Hosp.*, 710 P.2d 755, 760 (Okla.1985); *Jordan v. General Motors Corp.*, 590 P.2d 193, 196 (Okla.1979).

**19.** Beshara argues that a fidelity bond is not insurance and therefore § 2411 is inapplicable here. Because we find that the proof of loss claim relevant to the limited issue of knowledge, we need not address Beshara's argument that a fidelity bond is not technically "insurance against liability," making § 2411 inapplicable.

**20.** Title 12 O.S.1981 § 2403 provides:

"Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise."

The current version remains unchanged.

**make the funds available, that it also committed a bad faith tortious breach of contract and breach of fiduciary duty.** The Bank contends that the trial court did not err when it sustained its motion to dismiss Beshara's theory of breach of an implied duty of good faith and fair dealing or breach of fiduciary duty.

The relationship between a bank and its depositor is generally considered contractual.[21] Improper refusal to make the funds available would generally be considered a contractual breach of the Bank's obligation to pay Beshara his money.[22] Under the common law each contract carries an implicit and mutual covenant to act towards each other in good faith.[23] Likewise, under the Uniform Commercial Code, 12A 1981 § 1–203, commercial transactions carry an obligation of good faith in their performance and enforcement.[24] Consequently, the determinative issue raised by the parties' contentions is whether, under the facts presented, a breach of the implied covenant of good faith and fair dealing may give rise to an action in tort.

Generally, we agree with Beshara's contentions that banks have an obligation to exercise good faith and fair dealing with its customers. In *First Nat. Bank & Trust v. Kissee*, 859 P.2d 502, 509 (Okla.1993), and in *Rodgers v. Tecumseh Bank*, 756 P.2d 1223, 1227 (Okla.1988), this Court refused to recognize an action for a breach of the implied covenant of good faith and fair dealing which

results from a commercial contract between a bank and its customer, unless there was "gross recklessness or wanton negligence on behalf of a party."[25]

We found that if the factual situation warranted, an action for a breach of contract may also give rise to a tort action for a breach of the implied covenant of good faith and fair dealing. Beshara alleges that the Bank's actions in withholding the fund in his account were intentional, malicious, and in reckless and wanton disregard. In viewing these allegations as well as all of the inferences and conclusions drawn from the alleged facts, we find that Beshara should have been allowed the opportunity to proceed on his allegations for tortious breach of the duty of good faith and fair dealing. Accordingly, the trial court erred in refusing to allow Beshara to proceed on this alternative theory of recovery. However, In *First National Bank & Trust Co. of Vinita v. Kissee*, 859 P.2d 502, 510–11 (Okla.1993) we said:

> "Oklahoma recognizes the common law rule that the relationship between a bank and its customer is not fiduciary in nature, but is that of creditor-debtor. In all cases, the determination of the existence of a fiduciary relationship depends upon the factual circumstances, including the relationship of the parties involved, to each other and to the disputed transaction."

Here, Beshara neither avers nor points to any facts in the record which would support his theory that a special relationship existed

---

**21.** *Allied Fidelity Ins. Co. v. Bank of Okla.*, 894 P.2d 1101, 1103 (Okla.1995); *Ingram v. Liberty Nat. Bank & Trust Co. of Oklahoma City*, 533 P.2d 975, 980 (Okla.1975); *Waitman v. Waitman*, 505 P.2d 171, 174 (Okla.1972).

**22.** Title 23 O.S.1981 § 22, see note 13, supra; See also, *Sebring v. Federal Deposit Ins. Corp.*, 401 P.2d 479, 483 (Okla.1963).

**23.** *First Nat. Bank & Trust Co. of Vinita v. Kissee*, 859 P.2d 502, 509 (Okla.1993); *Rodgers v. Tecumseh Bank*, 756 P.2d 1223, 1227 (Okla.1988); *Hall v. Farmers Ins. Exchange*, 713 P.2d 1027, 1029 (Okla.1985).

**24.** Title 12A 1981 § 1–203 provides:
"Every contract or duty within this act imposes an obligation of good faith in its performance or enforcement."

The current version of this statute remains unchanged.

**25.** Beshara argues that the Court of Appeals decision was inconsistent with *Woods Petroleum v. Delhi Gas Pipeline Corp.*, 700 P.2d 1023 (Okla. App.1983), which involved a gas producer who sought damages against a pipeline company, and alleged theories of conversion, negligence, and breach of contract. However, *Woods*, is distinguishable on its facts and it is not controlling here. Rather, this Court has addressed the tortious nature of a breach of contract in the context of a bank and its depositor in *First Nat. Bank & Trust Co. of Vinita v. Kissee*, see note 23 supra, and in *Rodgers v. Tecumseh Bank*, see note 23, supra.

between him and the Bank which would give rise to a fiduciary duty. Nor do we find that one appears to exist under the alleged facts. Consequently, the trial court did not err when it dismissed Beshara's claim for breach of fiduciary duty.

Beshara also insists that the Bank's conduct in continually withholding the funds in his checking account amounted to conversion of his money.[26] The Bank insists that because the relationship between a bank and its depositor is in the nature of a debtor-creditor relationship and Beshara's account was a general deposit account, no claim for conversion exists.

In *Allied Fidelity Ins. Co. v. Bank of Oklahoma*, 894 P.2d 1101, 1103–04 (Okla. 1995) this Court, in describing the relationship between a bank and its depositor, stated:

> "... [T]he relation is one of debtor and creditor .... traditionally 'the bank-customer relationship has been considered that of debtor and creditor, founded upon the provisions of the deposit contract (and the rules of Article 4 [of the U.C.C.]).' ... 'The money deposited [in a bank] is no longer the property of the depositor, but becomes the property of the bank, and the bank becomes the debtor to the depositor.'" (Citations omitted.).

Quoting the United States Supreme Court in *Leather Manufacturers' Nat. Bank v. Merchants' Nat. Bank*, 128 U.S. 26, 9 S.Ct. 3, 32 L.Ed. 342 (1888) we also said:

> "The specific money deposited [in a bank] does not remain the money of the depositor, but becomes the property of the bank, to be invested and used as it pleases; its obligation to the depositor is only to pay out an equal amount upon his demand or order; and proof of refusal or neglect to pay such demand or order is necessary to sustain an action by the depositor against the bank. The bank cannot discharge its liability to account with the depositor to

the extent of a deposit, except by payment to him, or to the holder of a written order from him, usually in the form of a check."

However, in *Steenbergen v. First Fed. Sav. & Loan of Chickasha*, 753 P.2d 1330, 1332 (Okla.1987), relying on *Owens v. Andrews Bank & Trust Co.*, 265 S.C. 490, 220 S.E.2d 116 (1975), we recognized that once an account matures, a bank's withholding of a check which represented specifically identified and designated sums belonging to the depositor, and its use of the check in an unauthorized manner constitutes conversion. We said:

> "Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein. It is not necessary to constitute a conversion that the property come into the defendant's possession wrongfully. Nor is it necessary that the alleged converter apply the property to his own use." (Citations omitted.).

In *Owens*, the plaintiff brought an action for conversion against a bank which held up delivery of a check in a closed out account in order to pressure the plaintiff's husband to pay money on a financing arrangement that he was obligated to the bank. The Court recognized that the bank's mere refusal to pay the plaintiff the funds which she had on general deposit would not establish a case of conversion. However, the court found that the bank's conduct was so onerous that the facts established much more than a simple breach of contract. The bank's action constituted a wrongful and illegal misuse of the plaintiff's funds and amounted to a misappropriation of them to the bank for its own use and benefit.

■ The bank in *Owens* argued that the plaintiff's funds could not be converted because they were commingled with all of the other funds which the bank had on deposit.

---

26. In *Brown v. Oklahoma State Bank & Trust Co. of Vinita*, 860 P.2d 230, 232 (Okla.1993), this Court stated that:

> "The common law rule in Oklahoma is that only tangible personal property may be converted. When a person has a right to recover money, a chose in action exists. This is the action to bring for intangible personal property such as money.... Pursuant to 12 O.S.1991 § 2015, if the wrong action has been brought, amendments to pleadings are liberally allowed. For simplicity, we refer to the action as one in conversion." (Citations omitted.).

The court rejected this argument because the bank itself specifically identified and designated the sums belonging to the plaintiff when it closed the plaintiff's account. The bank's refusal to deliver the check which represented the plaintiff's funds upon demand and its use of the funds for its own wrongful and illegal purpose to the plaintiff's detriment constituted the tort of conversion. Considering Beshara's allegations and their reasonable inferences, we find that, like the bank in *Owens*, Southern National's conduct may have been so onerous that much more than a mere breach of conduct occurred, and that under the facts presented here, Beshara has stated a viable claim against the Bank for conversion.

## II.

**UNDER THE FACTS PRESENTED, THE APPELLANT SHOULD HAVE BEEN GIVEN AN OPPORTUNITY TO RESPOND TO THE APPELLEES' MOTION TO DISMISS HIS COUNTERCLAIM WHICH THE TRAIL COURT TREATED AS A MOTION FOR SUMMARY JUDGMENT.**

The trial court, after dismissing the wrongful dishonor claim, announced that it would entertain motions for summary judgment as to the counterclaims, which had previously been bifurcated from the wrongful dishonor claim. The Bank dismissed its counterclaim with prejudice and moved to renew its previous motion to dismiss Beshara's abuse of process claim, asserting that he had failed to state a claim upon which relief can be granted. Beshara objected, insisting that the trial court should not dismiss the abuse of process claim without allowing him an opportunity to prepare an adequate response and brief opposing a dismissal of the abuse of process claim. The trial court, treating the Bank's motion as a motion for summary judgment, refused to allow Beshara either an oral or written response to the Bank's motion. Rather, it dismissed his counterclaim without stating the basis for his findings.

We find that Beshara should have been given an opportunity to respond to the motion to dismiss/motion for summary judgment.[27] Title 12 O.S. Supp.1984 § 2012 mandates that: 1) when the trial court, considers matters outside of the pleadings on a motion to dismiss for failure to state a claim upon which relief can be granted the rules for summary judgment shall be followed; and 2) all of the parties **shall** be given a reasonable opportunity to present all material made pertinent to such a motion by the rules for summary judgment.[28] Rule 13, 12 O.S. Supp.1994, Ch. 2 app., Rules for the District Courts, in clear and mandatory language requires that a party opposing a motion for summary judgment be allowed at least 15 days to respond to the motion and to provide evidentiary materials which would support a denial of the motion.[29] Accordingly, the trial court erred when it failed to give Beshara a reasonable opportunity to respond as required by § 2012 and Rule 13.[30]

27. See also, our recent decision in *Washington v. State ex rel. Department of Corrections*, 915 P.2d 359 (Okla.1996).

28. Title 12 O.S. Supp.1984 § 2012 provides in pertinent part:
"If, on a motion asserting the defense numbered 6 of this subsection to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and all parties shall be given a reasonable opportunity to present all material made pertinent to such a motion by the rules for summary judgment...."
The current version remains unchanged.

29. Rule 13, 12 O.S. Supp.1994 Ch. 2, app., Rules for the District Courts, provides in pertinent part:

"... b. If the adverse party or parties wish to oppose the granting of the motion, they shall serve on the moving party and file with the court clerk within fifteen days after service of the motion a concise written statement of the material facts as to which he or they contend a genuine issue exists and the reasons for denying the motion...."
Although this rule was amended in 1993, the pertinent part remains unaltered.

30. The Bank insists that Beshara should not have been given an opportunity to respond because he had, two years earlier, already responded to its initial motion to dismiss. We find this argument without merit because Beshara has not been allowed to respond to the motion for summary judgment and to present evidentiary material in support of his response.

## CONCLUSION

At trial, Beshara presented evidence which supported his allegations for damages resulting from an alleged wrongful dishonor, we cannot say that there was an entire absence of proof to show any right of recovery under 12A 1981 § 4–402. The trial court erred in refusing to submit the wrongful dishonor claim to the jury.

 When the factual situation warrants, an action for a breach of contract may also give rise to a tort action for a breach of the implied covenant of good faith and fair dealing.[31] Considering Beshara's allegations, as well as all of the inferences and conclusions drawn from the alleged facts, he should have been allowed the opportunity to proceed on his allegations for tortious breach of the duty of good faith and fair dealing. However, Beshara neither avers nor points to any facts in the record which would support his theory that a special relationship existed between him and the Bank which would give rise to a fiduciary duty. Nor do we find that one appears to exist, under the alleged facts.

 Although, ordinarily an action for conversion would not lie when a bank withholds funds of its depositor,[32] Beshara alleges that the Bank had knowledge of the amount of funds which represented his account balance—yet it continually refused to deliver the funds upon demand. Considering his allegations and their reasonable inferences, we find that Southern National's conduct may have been so onerous that much more than a mere breach of conduct occurred, and that under the facts presented here, Beshara has stated a viable claim against the Bank for conversion.[33] He should be allowed the opportunity to prove his allegations to the trier of fact.

The trial court refused to allow Beshara either an oral or written response to the Bank's motion and it dismissed his counterclaim without stating the basis for his findings. Title 12 O.S. Supp.1984 § 2012 and Rule 13, 12 O.S. Supp.1984, Ch. 2 app., Rules for the District Courts, mandate that Beshara should have been given a reasonable opportunity to respond to the Bank's motion to dismiss before the trial court dismissed his counterclaim.[34]

**CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED; TRIAL COURT REVERSED AND REMANDED.**

WILSON, C.J., and HODGES, HARGRAVE and WATT, JJ., concur.

OPALA and SUMMERS, JJ., concur in part, dissent in part.

LAVENDER and SIMMS, JJ., dissent.

SIMMS, Justice, dissenting:

In my view, the appellant's claim does not lie for wrongful dishonor, but rather is in the nature of breach of contract, i.e., the depository agreement.

I am authorized to state that Justice LAVENDER concurs with the views expressed in this dissenting opinion.

**31.** *First Nat. Bank & Trust v. Kissee,* see note 23 supra; *Rodgers v. Tecumseh Bank,* see note 23, supra.

**32.** *Allied Fidelity Ins. Co. v. Bank of Oklahoma,* see note 21, supra; *Steenbergen v. First Fed. Sav. & Loan,* 753 P.2d 1330, 1332 (Okla.1987).

**33.** See, *Owens v. Andrews Bank & Trust Co.,* 265 S.C. 490, 220 S.E.2d 116 (1975).

**34.** Title 12 O.S. Supp.1984 § 2012, see note 28, supra; Rule 13, 12 O.S. Supp.1984, Ch. 2 app., Rules for the District Courts, see note 29, supra.