1999 OK CIV APP 17

John R. ROBERSON, David B. Magill and Andrew O'Dwyer, Plaintiffs/Appellants,

v.

PAINEWEBBER, INC., Painewebber Group, Inc., Blythe Eastman Painewebber Servicing, Inc., Fourth Street Associates, Rmm Corporation, AJ Corporation, Greater Southwestern Funding Corporation, Phc Corporation and Midtown Associates Limited Partnership, Defendants/Appellees.

No. 91747.

Court of Civil Appeals of Oklahoma, Division No. 1.

Oct. 15, 1999.

Certiorari Denied Jan. 20, 2000.

Mike Barkley, Leslie C. Weeks, Tulsa, Oklahoma, and Joel H. Bernstein, New York, New York, and Laurence L. Pinkerton, Judith A. Finn, Tulsa, Oklahoma, For Appellant,

John T. Schmidt, Andrew R. Turner, Tulsa, Oklahoma, and Philip J. John, Jr, David D. Sterling, Samuel Cooper, Houston, Texas, and William B. Federman, Bill Powell Guest, Oklahoma City, Oklahoma, For Appellee.

## OPINION

CARL B. JONES, C.J.:

¶1 In this appeal from these motions to dismiss, we are asked to determine whether the Appellants have stated a claim upon which relief can be granted. In 1985, Appellants, John R. Roberson, David B. Magill and

Andrew O'Dwyer, purchased high yield zero coupon bonds in a public offering. These bonds were issued as part of the financing of the construction of the MidContinent Tower in Tulsa, Oklahoma which would serve as the headquarters for Reading & Bates, Inc. (Reading). Series A Bonds and Series B Bonds were issued. The bonds upon which this lawsuit is based are the Series B Bonds. Repayment of the bonds depended upon Reading's unconditional long-term lease obligations. Reading, a public company involved in the oil and gas business, began suffering large losses by year-end 1985 and defaulted on its lease obligations in 1987, which resulted in a default on the bonds.

¶ 2   Appellants Roberson and Magill initially filed their petition on March 22, 1996. Then, on September 2, 1997, Appellants Roberson, Magill and O'Dwyer filed a consolidated amended petition individually and as a class action. Appellants alleged common law fraud, constructive fraud, negligent misrepresentation, breach of fiduciary duty, unjust enrichment, conversion, breach of an implied covenant, conspiracy, and breach of third party beneficiary contracts. The trial court never determined whether this action should be certified as a class action because Appellees Lehman Brothers and Smith Barney filed a Motion to Dismiss alleging that the statute of limitations had run. All of the other Appellees filed a Motion to Dismiss or in the alternative a Motion for Summary Judgment asserting that the statute of limitations had run and failure to state a claim. These issues were fully briefed by the parties, and the record reflects, that the parties presented oral arguments in support of their positions. At this hearing, Appellants agreed to dismiss Blyth Eastman Paine-Webber Servicing, Inc., Fourth Street Associates, RMM Corporation, AJ Corporation, PHC Corporation and Mid Town Associates Limited Partnership. The trial court took the motions under advisement and on May 26, 1998, the trial court announced its decision from the bench granting the motions to dismiss without leave to amend and, in the alternative, also granting the motion for summary judgment. The written order was filed July 17, 1998. Appellants appealed.

¶ 3   On appeal, Appellants failed to file a petition in error timely against Lehman Brothers and Smith Barney as Appellees. On February 16, 1999, the Oklahoma Supreme Court dismissed the appeal against these parties. The Appellees remaining in this appeal are PaineWebber, Inc., Paine-Webber Group, Inc. and Greater Southwestern Funding Corporation (PaineWebber).

¶ 4   A responsive pleading asserting the defense of failure to state a claim is treated as a motion for summary judgment when the parties present matters outside the pleadings and the trial court does not exclude these materials. *Meadows v. Fain*, 1989 OK 100, ¶ 8, 776 P.2d 1270, 1271. The parties introduced matters outside the pleadings when they submitted their briefs in support of their respective positions and the trial court noted that it had reviewed the attached documents. Accordingly, the standard of review on appeal will be that standard applied when reviewing summary judgment matters. Summary judgment is proper only when the pleadings, affidavits, depositions, or other evidentiary materials establish that no genuine issue exists regarding any material fact, and that the moving party is entitled to judgment as a matter of law. In reviewing a motion for summary judgment, all inferences and conclusions drawn from the evidence must be viewed in a light most favorable to the party opposing the motion for summary judgment. *Shelley v. Kiwash Electric Coop. Inc.*, 1996 OK 44, ¶ 15, 914 P.2d 669, 674.

¶ 5   PaineWebber asserts that determining whether a fact question exists on the asserted claims is unnecessary because the entire claim is barred by the statute of limitations. Appellant O'Dwyer, is a resident of Virginia and contends that the applicable statute of limitation for his claim is controlled by Virginia law. Both Oklahoma and Virginia provide that the statute of limitations period for a fraud claim is two years which is the shortest statute of limitation for the claims alleged. 12 O.S.1991 § 95. *STB Mktg. Corp. v. Zolfaghari*, 240 Va. 140, 393 S.E.2d 394. A statute of limitations begins to run from the time the cause of action accrues. A cause of action accrues when the litigant could maintain for the first time the

cause of action to conclusion. *Stephens v. General Motors Corp.*, 1995 OK 114, ¶ 8, 905 P.2d 797, 799. Fraud is deemed to have been discovered when, in the exercise of reasonable diligence, it could have or should have been discovered. *Baker v. Massey*, 1977 OK 170, ¶ 12, 569 P.2d 987, 991.

¶ 6 Appellants contend that the statute of limitation began to run when the foreclosure suit on the collateral supporting the B bonds was filed on July 26, 1994, as that was when the bondholders first incurred any damage to their investment and when the bondholders were put on notice of any fraud committed by PaineWebber. PaineWebber contends that when Reading was unable to pay the lease payments, injury occurred and Appellants with reasonable notice could have determined the injury.

¶ 7 PaineWebber contends that the prospectus provided to Appellants expressly disclosed Reading's central role in the success or failure of the investment as the prospectus provided: "Each of Southwestern, the Owner, MCA and RMM, as indicated, has limited equity capital and none of them can be viewed as a source of payment for the Bonds. As discussed above, payment of principal and interest will depend on R & B's ability to make rental payments under the Lease." Further, PaineWebber asserts that Appellants could have with the slightest exercise of diligence discovered Reading's quarterly and annual losses report in Reading's SEC filing during 1985 and 1986, both reported in *The Wall Street Journal* and in local publications. According to PaineWebber, by December 1987, Reading's default and its debt restructuring efforts were covered in the national and local financial media and readily available to Appellants. In addition, PaineWebber contends that the prospectus advised Appellants that Reading's net income was on the decline because in 1981 Reading's net income was approximately $93 million and in 1984 was only $25 million. The prospectus explained: "The primary reason for the net income decline in 1984 was the continuing decline in the demand for energy and related services." PaineWebber contends that this disclosure placed Appellants on inquiry notice. Appellants argue that PaineWebber has cast this investment as if the bonds had been issued by Reading rather than Greater Southwestern Funding Corporation and because Reading was not the issuer, Appellants could not be put on inquiry notice as Appellants relied on the advice of their brokers, not the information in the prospectus. Additionally, Appellant O'Dwyer denies ever receiving a copy of the prospectus.

¶ 8 PaineWebber argues that if the above information did not place Appellants on notice, that the latest date that the statute of limitations could have been triggered was on March 4, 1988, when the law firm of Csaplar & Bok, based in Boston, Massachusetts, wrote a letter to the holders of the B Bonds informing them that PaineWebber had retained this law firm to represent the interests of the B bondholders and advising the holders that Reading had defaulted on its rent and consequently the bonds were in default. All of the Appellants deny ever receiving this letter. Based on the evidence provided, the facts are disputed regarding when a reasonable person with due diligence would have discovered the alleged fraud and injury to their investments. It was error for the trial court to grant summary judgment on the issue of the statute of limitations.

¶ 9 The second issue for review is whether as a matter of law summary judgment should have been granted on Appellants' claim of fraud. To pursue a claim of fraud, Appellants must prove a) PaineWebber made a material representation; b) that the representation was false; c) PaineWebber knew it was false or made it recklessly, without regard for its truth; d) PaineWebber made it with the intention that Appellants act upon it; and e) injury was suffered by Appellants as a result. *Silk v. Phillips Petroleum Co.*, 1988 OK 93, ¶ 12, 760 P.2d 174, 176–77. Appellants produced an affidavit from a broker who had worked for PaineWebber and had sold these particular B Bonds. The broker testified that PaineWebber had discouraged their brokers from studying the prospectus themselves or advising clients to read the prospectus. Instead, PaineWebber provided documents to the brokers which the brokers were to use in promoting the B Bonds such

as summaries and a Corporate Finance Division Memorandum which provided that this investment was an excellent vehicle to fund pension funds. Further, the Memorandum indicated that if Reading could no longer occupy the property, Reading would be required to buy back the property at a price that paid bondholders their principal, accrued interest and a bonus of 1% per remaining year to maturity of the accrued value of the B bonds. PaineWebber denies any conduct inconsistent with the prospectus statement. In reviewing the evidence in the light most favorable, Appellants have provided evidence inferring fraud by PaineWebber. The trial court erred in granting summary judgment on the issue of fraud.

¶ 10 The third issue for review is whether controverted facts exist regarding Appellants' claim for breach of fiduciary duty against the Appellees. A fiduciary relationship springs from an attitude of trust and confidence and is based on some form of agreement, either expressed or implied, from which it can be said the minds have been met to create a mutual obligation. *Lowrance v. Patton*, 1985 OK 95, ¶ 17, 18, 710 P.2d 108, 111–12. In determining whether a fiduciary relationship was established, several factors have been adopted to serve as guide for this fact-driven question. It includes not only all legal relationships, e.g., guardian and ward, attorney and client, but it extends to every possible case from which there is confidence reposed on one side and resulting domination and influence on the other. The relationship need not be legal as the relationship may develop because of moral, social, domestic or merely personal relations. The term "fiduciary relationship" is a very broad term and has been applied in circumstances where influence has been acquired and abused and where confidence has been reposed and betrayed. The origin of the confidence and the source of the influence are immaterial. The question is whether a relation in fact exists. *Sellers v. Sellers*, 1967 OK 34, ¶¶ 21, 22, 428 P.2d 230, 236.

¶ 11 PaineWebber argues that the majority of courts have held that a broker does not owe a general, *per se* fiduciary duty to its customers. After reviewing all of the cases relied upon by PaineWebber, we found that all of the jurisdictions determined that there was a duty to a broker's customers, however, the extent of the duty depended upon the nature of the relationship between the broker and customer[1]. In *MidAmerica*

1. Alabama: *Chipser v. Kohlmeyer & Co.*, 600 F.2d 1061, 1066–67 (5th Cir. 1979); Arizona: *SEC v. Raushcer Pierce Refsnes, Inc.*, 17 F.Supp.2d 985, 992–93 (D.Ariz. 1998); Arkansas: *Greenwood v. Dittmer*, 776 F.2d 785, 788 (8th Cir. 1985);California: *Duffy v. Cavalier*, 215 Cal.App.3d 1517, 264 Cal.Rptr. 740 (1989); Colorado: *Rupert v. Clayton Brokerage Co.*, 737 P.2d 1106, 1109 (Colo. 1987); Delaware: *O'Malley v. Boris*, 1999 WL 39548 (Del. Ch. Jan. 19, 1999); Florida: *First Union Brokerage v. Milos*, 717 F.Supp. 1519, 1526 (S.D. Fla. 1989); Georgia: *Tigner v. Shearson–Lehman Hutton, Inc.*, 201 Ga.App. 713, 411 S.E.2d 800, 802 (1991); *Unity House, Inc. v. North Pacific Investments, Inc.*, 918 F.Supp. 1384, 1392 (D. Hawaii 1996); Illinois: *Martin v. Heinold Commodities, Inc.*, 163 Ill.2d 33, 205 Ill.Dec. 443, 643 N.E.2d 734, 738 (1994); Indiana: *Holtz v. J.J.B. Hilliard W.L. Lyons, Inc.*, 185 F.3d 732 (7th Cir. 1999); Iowa: *Cunningham v. PFL Life Insurance Co.*, 42 F.Supp.2d 872, 888–89 (N.D.Iowa 1999); Kansas: *Denison State Bank v. Madeira*, 230 Kan. 684, 640 P.2d 1235, 1241 (1982); Louisiana: *Beckstrom v. Parnell*, 730 So.2d 942, 948–49 (La.App. 1998); Maryland: *Kaufman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 464 F.Supp. 528, 536 (D.Md. 1978); Massachusetts: *Cannistraci v. Dean Witter Reynolds, Inc.*, 796 F.Supp. 619, 623 (D.Mass. 1992); Michigan: *Davis v. Keyes*, 859 F.Supp. 290, 294 (E.D. Mich. 1994); Minnesota: *McGinn v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 736 F.2d 1254, 1258 (8th Cir. 1984); Mississippi: *Puckett v. Rufenacht, Bromagen & Hertz, Inc.*, 587 So.2d 273, 279 (Miss. 1991): Missouri: *Vogel v. A.G. Edwards & Sons, Inc.*, 801 S.W.2d 746 (Mo. Ct. App. 1990); Montana: *Chor v. Piper, Jaffray & Hopwood, Inc.*, 261 Mont. 143, 862 P.2d 26, 32 (1993); Nebraska: *Woodruff v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 709 F.Supp. 181, 185 (D. Neb. 1989); New Jersey: *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 766 (3rd Cir. 1990); New Mexico: *Reinhart v. Rauscher Pierce Securities Corp.*, 83 N.M. 194, 490 P.2d 240 (App. 1971): New York: *Press v. Chemical Investment Services Corp.*, 166 F.3d 529, 536 (2nd Cir. 1999): North Dakota: *Ray E. Friedman & Co. v. Jenkins*, 738 F.2d 251, 254 (8th Cir. 1984); Ohio: *Thropp v. Bache Halsey Stuart Shields, Inc.*, 650 F.2d 817, 822 (6th Cir. 1981); Oregon: *Berki v. Reynolds Sec., Inc.*, 277 Or. 335, 560 P.2d 282, 285–86 (1977); Pennsylvania: *Merrill Lynch, Pierce, Fenner & Smith v. Perelle*, 356 Pa.Super. 165, 514 A.2d 552, 561 (1986); Rhode Island: *Jonklaas v. Silverman*, 117 R.I. 691, 370 A.2d 1277 (1977); South Dakota: *Dinsmore v. Piper Jaffray, Inc.*, 593 N.W.2d 41, 46 (S.Dakota 1999): Tennessee: *J.C. Bradford Futures, Inc. v. Dahlone-*

*Fed. Sav. & Loan Ass'n v. Shearson/American Express Inc.*, 886 F.2d 1249 (10th Cir. 1989), the Tenth Circuit Court of Appeals found that a fiduciary duty may be imposed in situations where the broker and the customer are not on equal footing, where on one side, there is an overmastering influence, or, on the other side, there is a dependency or trust, justifiably reposed. The court noted that the nondiscretionary nature of the account would generally decrease the fiduciary relationship, but that fact was not sufficient to defeat the customer's claim. Instead, the court examined the particular facts of the case, which revealed the broker had influence with the customer and that the customer was uninformed about the transaction. The court concluded there was sufficient evidence to support the jury's conclusion that a fiduciary relationship existed. Despite how the various jurisdictions ultimately have viewed the relationship, the touchstone of determining whether a fiduciary relationship exists depends upon the factual circumstances, including the relationship of the parties involved, to each other and to the transaction in question. *First Nat'l Bank & Trust Co. v. Kissee*, 1993 OK 96, ¶ 32, 859 P.2d 502, 510–11.

¶ 12   On rehearing, PaineWebber argues O'Dwyer cannot state a claim for breach of a fiduciary relationship. Paine-Webber relies upon *Chance v. F.N. Wolf & Co.*, 36 F.3d 1091, 1994 WL 529901, at *3 (4th Cir. Sept. 30, 1994), as Virginia's pronouncement on this issue. We have reviewed this case and find that PaineWebber's reliance is unjustified. *Chance* is an unpublished disposition by the federal court, in which the court notes that the district court found no fiduciary relationship. The reviewing court notes that the issue of whether a fiduciary relationship exists was not appealed. Therefore, this case cannot be relied upon as the definitive Virginia law on the issue of fiduciary relationships. After a review of Virginia law, it appears Virginia has not been presented with fiduciary relationship claim between a broker and a customer. However, Virginia has defined what constitutes a fiduciary relationship. A fiduciary relationship exists where a special competence has been placed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence. *H–B Ltd. Partnership v. Wimmer*, 220 Va. 176, 257 S.E.2d 770 ( 1979).

¶ 13   PaineWebber contends that Appellants Roberson and Magill did not purchase their Series B Bonds from Paine-Webber but from Rotan Mosle (an affiliated firm) thus are unable to state a claim for breach of fiduciary duty. However, Paine-Webber does not dispute that this affiliated firm was selling Series B Bonds for Paine-Webber as the corporation issuing the bonds was a subsidiary corporation of Paine-Webber. While a fiduciary relationship clearly exists, the facts are disputed as to the extent of the relationship and whether a breach of a fiduciary relationship has occurred as PaineWebber contends that no misrepresentations or fraud occurred as evidenced by the prospectus, while Appellants rely upon the broker's affidavit which shows an inconsistency between the documents provided to brokers and the actual prospectus. It was error for the trial court to grant the motion for summary judgment on the breach of a fiduciary relationship issue. On remand the trier of fact must determine the relationship between PaineWebber and each Appellant under the facts surrounding the disputed transaction and whether any breach occurred in the fiduciary duty established between the parties.

¶ 14   The fourth issue presented for review in this summary disposition is whether there are disputed facts regarding Appellants' claim for negligent misrepresentation. PaineWebber contends that Virginia does not recognize the tort of negligent misrepresentation and therefore Appellant O'Dwyer is barred from asserting this claim. It appears

ga Mint, Inc.*, 907 F.2d 150, 1990 WL 95625 (6th Cir. 1990) Texas: *Tapia v. The Chase Manhattan Bank, N.A.*, 149 F.3d 404, 412 (5th Cir. 1998); Utah: *Marchese v. Nelson*, 809 F.Supp. 880, 894 (D.Utah 1993); Vermont: *Jarvis v. Dean Witter Reynolds, Inc.*, 614 F.Supp. 1146, 1150 (D. Vt.

1985); West Virginia: *Baker v. Wheat First Securities*, 643 F.Supp. 1420 (S.D.W.Va. 1986); Wisconsin: *Associated Randall Bank v. Griffin, Kubik, Stephens & Thompson, Inc.*, 3 F.3d 208, 212 (7th Cir. 1993).

that Virginia treats a claim of negligent misrepresentation as a claim for constructive fraud. *Richmond Metropolitan Authority v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 507 S.E.2d 344, 347. PaineWebber argues that Appellants Robberson and Magill must show a special relationship to avail itself of this claim. Obviously, PaineWebber was basing this argument on the premise that Appellants would be unable to show a fiduciary relationship. However, as the extent of the fiduciary relationship is disputed as discussed above, Appellants have produced evidence to show a disputed fact of negligent misrepresentation/constructive fraud through the broker's affidavit. It was error for the trial court to have granted the motion for summary judgment on this issue.

¶ 15 The fifth issue for review is whether there are disputed facts regarding Appellants' claim of unjust enrichment. PaineWebber asserts that an unjust enrichment claim is unavailable to Appellants because there is an express written contract between these parties on this subject matter. However, in *French Energy, Inc. v. Alexander*, 1991 OK 106, ¶ 14, 818 P.2d 1234, 1238, the Oklahoma Supreme Court found that although there was an express contract between the parties on the subject matter in question, equity required that the contract be rescinded and restitution paid to prevent unjust enrichment. Appellants argue that because of the fraud, manipulation, and misrepresentation involved in the procurement of their money for the purchase of the B Bonds, the indenture should be rescinded and a constructive trust created for the benefit of Appellants containing all of the fees, discounts and commissions and other consideration obtained by PaineWebber.

¶ 16 Equity courts have fashioned the fiction of a constructive trust to force restitution from one who was unjustly enriched. The inequity of retaining a benefit can spring from a variety of sources, such as fraud in which the recipient has received a benefit for which he has not responded with a quid pro quo. Equity has held a disloyal fiduciary chargeable as a constructive trustee of the undeserved profits in his possession. *Warren v. Century Bankcorporation, Inc.*,

1987 OK 14, ¶ 15, 741 P.2d 846, 852. Appellants have produced evidence to show a controverted fact regarding the fiduciary relationship and supporting a fraud claim. Whether PaineWebber has been unjustly enriched as a result of this alleged fraud is a question for the jury to determine.

¶ 17 The sixth issue for review is whether the facts are disputed regarding Appellants' claim of conversion. Conversion is any act of dominion wrongfully exercised over another's personal property inconsistent with his rights therein. To constitute conversion, it is not necessary for the property to be wrongfully in the defendant's possession or for the alleged converter to apply the property to his own use. *Beshara v. Southern Nat'l Bank*, 1996 OK 90, ¶ 32, 928 P.2d 280, 289–90. PaineWebber contends that Appellants voluntarily purchased these B Bonds and cannot prove an action for conversion. Appellants contend that the evidence of fraudulent misrepresentations/ concealment vitiated any voluntary payment to PaineWebber and constitutes an inconsistent use of Appellants' funds. The facts are controverted whether the alleged misuse of Appellants' funds rises above a mere breach of contract and encompasses a conversion of funds. *Beshara v. Southern Nat'l Bank, supra.*

¶ 18 The seventh issue for review is whether disputed facts exist regarding Appellants' claim of a breach of a third-party beneficiary contract under the guaranty and the contract between PaineWebber and the National Association of Securities Dealers (NASD). The primary issue in a case where the suing plaintiff claims third-party beneficiary status is whether the direct parties to the contract intended the third party to have such status. Where a contract is made expressly for the benefit of a third party that party may avail himself of contractual benefits and maintain an action thereon. *Great Plains Fed. S & L v. Dabney*, 1993 OK 4, ¶ 9, 846 P.2d 1088, 1093. The lease guaranty agreement with AJ Corporation expressly provides: "This Guaranty shall be personal to Fourth Street Associates and shall not be assignable by Lessor or innure

(sic) to the benefit of any person other than Fourth Street Associates as constituted on the date hereof." This language clearly negates any third-party beneficiary status for Appellants.

¶ 19 The second alleged contract which Appellants contend was made for their benefit is the member contract between PaineWebber and NASD. Appellees assert that NASD is a self-regulatory organization which provides an ethical code of conduct for members and the membership contract in no way creates a third-party beneficiary contract with Appellants. Appellants assert that the membership contract required Paine-Webber to follow NASD rules and when PaineWebber violated these rules, Appellants, as third-party beneficiaries, are allowed to pursue an action for breach of a third-party contract. All that has been provided in the record are excerpts from the NASD manual which discuss the ethics when dealing with clients without any provision expressly providing a cause of action enforceable by a third party. The actual contract has not been provided. A summary judgment ruling must be made on the record in fact presented by the parties, not on a record potentially possible. *Prudential Ins. Co. v. Glass*, 1998 OK 52, ¶ 3, 959 P.2d 586, 588. Without the contract, Appellants are unable to withstand PaineWebber's motion for summary judgment on the issue of breach of a third-party beneficiary contract.

¶ 20 The eighth issue for review is whether there are disputed facts to withstand the motion for summary judgment on Appellants' claim for breach of an implied covenant of good faith and fair dealing. Under common law each contract carries an implicit and mutual covenant to act toward each other in good faith. However, the Oklahoma Supreme Court has not recognized an action for a breach of the implied covenant of good faith and fair dealing in a commercial contract unless there was gross recklessness or wanton negligence by a party. *Beshara v. Southern Nat'l Bank, supra* at 288. Appellants presented evidence through a broker that PaineWebber had provided information for all brokers to rely on which was inconsistent with the prospectus. In addition, the broker averred that PaineWebber had discouraged brokers from providing prospectuses to clients or even reviewing the material themselves. In viewing the evidence in the light most favorable to Appellants, we find that a question of fact is presented whether the asserted conduct of Paine-Webber rises to the level of gross recklessness or wanton negligence warranting a breach of an implied covenant of good faith and fair dealing.

¶ 21 The final issue for review in this summary disposition matter is whether Appellants have shown controverted facts to support their claim for civil conspiracy. A civil conspiracy consists of a combination of two or more persons to do an unlawful act, or to do a lawful act by unlawful means. Civil conspiracy itself does not create liability. To be liable the conspirators must pursue an independently unlawful purpose or use an independently unlawful means. A conspiracy between two or more persons to injure another is not enough; an underlying unlawful act is necessary to prevail on a civil conspiracy claim. *Brock v. Thompson*, 1997 OK 127, ¶ 39, 948 P.2d 279, 294. The only Appellees remaining in this lawsuit are PaineWebber, Inc. PaineWebber Group, Inc. and Greater Southwestern Funding Corporation (a corporation formed by PaineWebber to issue bonds). Appellants have contended throughout this lawsuit that these three groups are really one corporation as PaineWebber Group, Inc. and Greater Southwestern Funding Corporation are controlled by and are alter egos of PaineWebber, Inc. If one corporation is simply the instrumentality of another corporation, the separation between the two may be disregarded and treated as one for the purpose of tort law. *Oliver v. Farmers Ins. Group*, 1997 OK 71, ¶ 8, 941 P.2d 985, 987. Appellants are unable to meet the first element of a civil conspiracy which requires two or more persons conspiring. Granting of summary judgment on the issue of civil conspiracy is affirmed.

¶ 22 We find that the trial court's grant of summary judgment to PaineWebber is reversed and remanded on the issues of statute of limitations, fraud, breach of a fiduciary duty, negligent misrepresentation, unjust en-

richment, conversion, and breach of an implied duty of fair dealing. The trial court is affirmed on the issues of breach of third-party beneficiary contracts and civil conspiracy.

¶23 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

¶24 HANSEN, P.J., and ADAMS, J., concur.