97 P.3d 639 (2001)
2004 OK 57
In re George Lee GREGORY and Billie Ruth Gregory, Debtors.
Susan Manchester, Trustee, Plaintiff,
v.
Green Tree Financial Servicing Corporation and Conseco Finance Servicing Corporation, Defendants.
No. 97,741.
Supreme Court of Oklahoma.
July 6, 2001.
Susan Manchester of Taylor & Manchester, Oklahoma City, OK, for Plaintiff.
Sandy L. Schovanec of Phillips McFall McCaffrey McVay & Murrah, P.C., Oklahoma *640 City, OK, for Defendant Conseco Finance Servicing Corporation.
Jennifer H. Kirkpatrick of Phillips McFall McCaffrey McVay & Murrah, P.C., Oklahoma City, OK, for Green Tree Servicing, L.L.C., substituted successor Defendant to Conseco Finance Servicing Corporation.
LAVENDER, J.
¶ 1 This Court has been presented with a question of law certified from the United States Bankruptcy Court for the Western District of Oklahoma, Judge Richard L. Bohanon, pursuant to the Revised Uniform Certification of Questions of Law Act, 20 O.S.2001, § 1601 et seq., to wit:
[u]nder Oklahoma law, did the [d]efendants, who are creditors of the [d]ebtors, fail to properly perfect their security interest in the [d]ebtors' mobile home when they filed a lien entry form and application for a certificate of title containing the incorrect vehicle identification number (hereinafter "VIN") and where the VIN [ ] was incorrect by only one digit?
Our answer to the question is as follows:
if the existence of the lien was not readily ascertainable from a reasonably diligent/prudent search of the Oklahoma Tax Commission (OTC) records as a result of the creditor's one digit error in the vehicle's VIN on a lien entry form and application for a certificate of title submitted to the OTC or one of its motor license agents because it is assumed the applicable vehicle lien records of the OTC were filed/indexed solely according to a vehicle's VIN at the time of submission, the creditor's security interest in the vehicle would not be deemed properly perfected under Oklahoma law.

PART I. FACTS AND PROCEDURAL HISTORY.[1]
¶ 2 The debtors, George Lee Gregory and Billie Ruth Gregory, purchased a 1997 Cavalier Mobile Home from Sunbelt Homes. The correct vehicle identification number (VIN) of the mobile home is: ALCA0696680S 40117. (Bolding and underlining added.)[2] Defendant, Green Tree Financial Servicing Corporation (Green Tree Corp.) is the assignee and holder in due course of the promissory note, security agreement and disclosure statement signed by the debtors and Sunbelt. Defendant, Conseco Finance Servicing *641 Corporation (Conseco) is Green Tree Corp.'s successor in interest. Plaintiff, Susan Manchester, is the trustee in the debtors' Chapter 7 bankruptcy case.
¶ 3 The instant case has been subject to a stay order since March 2003, said Order issued by the Chief Justice, after this Court was notified by Conseco's March 11, 2003 filing that it had itself filed for bankruptcy protection in the Northern District of Illinois, Eastern Division. Although the stay remains in effect as to Conseco, the stay was dissolved in other respects by the Chief Justice's Order of June 9, 2004 after the Court was informed by filings herein that, consistent with developments in Conseco's Illinois bankruptcy, the bankruptcy judge in the Gregory Western District of Oklahoma bankruptcy had substituted an entity named Green Tree Servicing, L.L.C. (Green Tree, L.L.C.) as successor defendant to Conseco in the Gregory Oklahoma bankruptcy. In June 2004 Green Tree, L.L.C. formerly adopted as its own the brief in chief of Conseco previously filed with this Court and the matter is, thus, now ripe for decision. We also note, at places in this opinion we continue to refer to Conseco, notwithstanding our recognition that Green Tree, L.L.C. has been substituted as defendant for Conseco in the Western District of Oklahoma federal bankruptcy proceeding.[3]
¶ 4 On or about July 3, 1996 Green Tree Corp. submitted three documents to and had them filed with an Oklahoma motor license agent in regard to perfecting a security interest in the mobile home and generating a certificate of title for it. The documents were: (1) a lien entry form showing the VIN for the mobile home as ALCA06966805 40117; (2) an application for an Oklahoma certificate of title for a vehicle (i.e., the mobile home) showing the VIN as ALCA06966805 40117; and (3) a manufacturer's statement or certificate of origin to a manufactured home (i.e., the mobile home) showing the VIN as ALCA0696680S 40117. (Bolding and underlining added.) Obviously, (1) and (2) showed wrong VINs and (3) showed the correct VIN.
¶ 5 Also, separate lien and title receipts issued on or about July 3, 1996. Both the lien receipt and the title receipt, on their faces, show VINs. The lien receipt VIN matched the incorrect one contained on (1) and (2) above. The title receipt had the correct VIN. Furthermore, the lien receipt had a receipt number on it, to wit: XXXXXXXXXA7962. (Bolding and underlining added.) The title receipt had a receipt number on it, XXXXXXXXXA7967 (bolding and underlining added), that did not match the lien receipt number, but did match a number shown on the actual certificate of title that issued. The title receipt did not reflect any lien.[4]
¶ 6 Subsequently, debtors filed their Chapter 7 bankruptcy petition in April 2001. At the time debtors filed for bankruptcy, the certificate of title that had been issued for the mobile home did not show a lien in favor of Green Tree Corp. or Conseco, or, for that matter, a lien at all. Further, the certificate of title had the correct VIN on it, apparently, the source document used for its preparation being the manufacturer's statement or certificate of origin to a manufactured home (i.e., the involved mobile home), said document being the one submitted to the agent by Green Tree Corp. in July 1996 that did contain the correct VIN.
*642 ¶ 7 On or about September 14, 2001  i.e., after debtors filed for bankruptcy  a corrected lien form was filed (i.e., one containing the correct VIN) and a new lien receipt issued. Both of said documents (on their faces) appear to be an attempt to relate the effectiveness of the lien back to the July 1996 date that Green Tree Corp. initially submitted a lien entry form to the motor license agent with an incorrect VIN.[5]
¶ 8 In the Oklahoma federal bankruptcy proceeding the trustee and Conseco both moved for summary judgment. The federal court concluded it was necessary to have this Court answer the certified question in order to properly determine whether the trustee or Conseco is entitled to summary judgment. In essence, the trustee asserts the one digit error in the VIN renders Conseco's security interest unperfected because another creditor would have had no notice of the lien in that the pertinent title and lien documents are indexed by OTC by VIN instead of by the name of the debtor and, thus, a reasonably diligent/prudent search of the OTC records would not reveal the existence of the lien. Conseco, in effect, asserts the one digit error is minor, that substantial compliance with necessary filing requirements to perfect the security interest occurred, and it was the duty of the license agent to have caught the error in the VIN.

PART II. ANALYSIS.
¶ 9 Title 47 O.S.Supp.1995, § 1110(A)(1), (2) and (7), concern perfection of a security interest in a vehicle. Those subsections provided in pertinent part as follows:
A. 1. Except for a security interest in vehicles held by a dealer for sale or lease ... and a vehicle being registered in this state which was previously registered in another state and which title contains the name of a secured party on the face of the other state certificate or title, a security interest ... in a vehicle as to which a certificate of title may be properly issued by the Oklahoma Tax Commission shall be perfected only when a lien entry form prescribed by the [OTC], and the existing certificate of title, if any, or application for a certificate of title and manufacturer's certificate of origin containing the name and address of the secured party and the date of the security agreement and the required fee are delivered to the [OTC] or to a motor license agent..... The filing and duration of perfection of a security interest, pursuant to the provisions of Title 12A of the Oklahoma Statutes... shall not be applicable to perfection of security interests in vehicles as to which a certificate of title may be properly issued by the [OTC], except as to vehicles held by a dealer for sale or lease.... In all other respects Title 12A of the Oklahoma Statutes shall be applicable to such security interests in vehicles as to which a certificate of title may be properly issued by the [OTC].
2. Whenever a person creates a security interest in a vehicle, such person shall surrender to the secured party the certificate of title or the signed application for a new certificate of title, on the form prescribed by the [OTC], and the manufacturer's certificate of origin. The secured party shall deliver the lien entry form and the required lien filing fee within twenty (20) days as provided hereafter with certificate of title or the application for certificate of title and the manufacturer's certificate of origin to the [OTC] or to a motor license agent. If the lien entry form, the lien filing fee and the certificate of title or application for certificate of title and the manufacturer's certificate of origin *643 are delivered to the [OTC] or to a motor license agent within twenty (20) days after the date of the lien entry form, perfection of the security interest shall begin from the date of the execution of the lien entry form, but otherwise, perfection of the security interest shall begin from the date of the delivery to the [OTC] or to a motor license agent.
* * *
7. The [OTC] shall have the duty to record the lien upon the face of the certificate of title issued at the time of registering and paying all fees and taxes due on the vehicle.
(Emphasis added.)[6]
¶ 10 In July 1996 (as today) the perfection of a security interest in a vehicle was primarily controlled by the above provisions. The filing of a financing statement under the Uniform Commercial Code (U.C.C.), Article 9, Secured Transactions (found in Oklahoma Statutes, Title 12A) is not necessary or effective to perfect a security interest in a vehicle covered by § 1110, the latter providing for central filing with the OTC, either directly or through one of its motor license agents. § 1110(A)(1)-(2); see Funnell, Secured Transactions: Certificates of Title  Delivery or Notation? The Lender's Dilemma, 37 Okla.L.Rev. 618, 619 (1984); 12A O.S.Supp.1995, § 9-302(1)(i) and § 9-302(3)(b)[for current provision, see now 12A O.S.2001, § 1-9-311(a)(2)].[7] However, where U.C.C concepts or case law are neither conflicting nor inconsistent with applicable motor vehicle provisions, those concepts or case law may be used to interpret and inform our determinations of questions as to whether a particular security interest in a vehicle has been properly submitted for filing and, thus, perfected under the motor vehicle title/lien entry form statute. In Re Cook, 1981 OK 144, 637 P.2d 588. Further, the plain language of the above-quoted parts of § 1110 provide that perfection of a security interest in a covered vehicle is accomplished by delivery of the required documents to the OTC or a motor license agent. Liberty Nat. Bank and Trust Co. of Oklahoma City v. Garcia, 1984 OK CIV APP 29, 686 P.2d 303, 306; Funnell, Secured Transactions: Certificates of Title  Delivery or Notation? The Lender's Dilemma, 37 Okla.L.Rev. at 624. In other words, a creditor's delivery of proper documentation to the filing officer perfects, even though for some reason the filing officer fails to note/indicate the lien on the certificate of title.
¶ 11 Although the Legislature obviously intended that notation/indication of the security interest on the certificate of title would be a mechanism by which to provide notice of a security interest in a vehicle to subsequent potential purchasers or creditors, the Legislature also sought to ensure that such other persons or entities would have a means to become aware of a security interest even when the security interest was not so noted on the certificate of title. Liberty Nat. Bank and Trust Co. of Oklahoma City v. Garcia, 686 P.2d at 306. This is clear from examination of 47 O.S.Supp.1995, § 1110(C), which provided:
C. The [OTC] shall file and index certificates of title so that at all times it will be possible to trace a certificate of title to the vehicle designated therein, identify the lien entry form, and the names and addresses of secured parties, or their assignees, so that all or any part of such information may be made readily available to those who make legitimate inquiry of the *644 [OTC] as to the existence or nonexistence of security interest in the vehicle.
¶ 12 As we read § 1110(C), particularly the clause of the sentence before the first comma  "[t]he [OTC] shall file and index certificates of title so that at all times it will be possible to trace a certificate of title to the vehicle designated therein"  the only method to comply with its dictates (i.e., the only way to trace the title to a specific vehicle) is to use the VIN as the filing/indexing criterion. Although there may be certain cross-indexing techniques used by OTC (e.g. receipt number, title number, or debtor name), the record presented with the certified question does not reveal or detail such alternative cross-indexing mechanisms; thus, for our answer to the certified question we must assume the applicable filing/indexing scheme used by OTC is by VIN.[8]
¶ 13 In In Re Cook, supra, this Court held that whether the filing requirements under the motor vehicle lien statutes have been substantially complied with so as to give the requisite notice to other creditors depends on the facts of each case. 637 P.2d at 590. Title 12A O.S.2001, § 1-9-506(a) [previously 12A O.S.1991, § 9-402(8)] provides; "[a] financing statement substantially satisfying the requirements of this part is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading."[9] The problem is, as we see it, whether the one digit error on the lien entry form and the application for certificate of title submitted by Green Tree Corp. to the motor license agent, because of the manner in which OTC indexed the relevant documents, made it unreasonably difficult or arduous, if not virtually impossible  i.e., the antithesis of readily available or ascertainable  by a search of applicable OTC records, to discover the existence of the lien? In essence, if the one digit error cloaked discovery of the very existence of the security interest from the view of a reasonably diligent or prudent inquirer, the error cannot be considered minor, but instead *645 must be considered seriously misleading and a finding of perfection would not be warranted by virtue of the documents submitted in July 1996. We believe there is no alternative rational way to view the matter.[10]
¶ 14 Almost thirty (30) years ago in the case of Central Nat. Bank. & Trust Co. of Enid v. Community Bank & Trust, 1974 OK 141, 528 P.2d 710, this Court dealt with the issue of the significance of an error in a security agreement filed as a financing statement regarding a security interest in a vehicle when the error, because of the manner in which the records were indexed by the filing officer, failed to provide notice of the lien to a subsequent creditor that used reasonable diligence to search the filing officer's records (then the lien records of the County Clerk). We held in Central Nat. Bank. & Trust Co. that where the first-in-time creditor used the middle and last name of the debtor instead of his first name, middle initial and last name (i.e., Lee Anderson, instead of James L. Anderson), the certificate of title issued in the name of James L. Anderson and the indexing was done by the County Clerk's office by name, the error made by the first creditor was sufficiently misleading such that a second-in-time creditor that had filed its security agreement under the name shown on the title, had priority even though second in time and that such subsequent creditor was not required, for reasonable diligence purposes, to examine all of the secured transaction indexes under the name Anderson.[11]Central Nat. Bank. & Trust Co., 528 P.2d at 712-713. Although our decision was, at least, partially made on equitable considerations (which the U.C.C. allows to supplement its provisions unless displaced by particular provisions of the Code, 12A O.S.2001, § 1-103), we believe the principle delineated in Central Nat. Bank. & Trust Co. remains as sound today, as it was almost three decades ago. That is, although exact compliance is not obligatory, but only substantial compliance is necessitated, if the error made by a creditor leads to a mis-indexing such that a subsequent purchaser or creditor cannot find the existence of the lien via reasonably diligent/prudent inquiry made to, with or of the appropriate filing office and its records, the error may not be considered a minor one, but must be determined seriously misleading.[12]
*646 ¶ 15 Our answer to the certified question is, therefore, as follows:
if the existence of the lien was not readily ascertainable from a reasonably diligent/prudent search of the Oklahoma Tax Commission (OTC) records as a result of the creditor's one digit error in the vehicle's VIN on a lien entry form and application for a certificate of title submitted to the OTC or one of its motor license agents because it is assumed the applicable vehicle lien records of the OTC were filed/indexed solely according to a vehicle's VIN at the time of submission, the creditor's security interest in the vehicle would not be deemed properly perfected under Oklahoma law.

CERTIFIED QUESTION ANSWERED.
¶ 16 OPALA, V.C.J., HODGES, LAVENDER, HARGRAVE, KAUGER, BOUDREAU, WINCHESTER and EDMONDSON, JJ., concur.
¶ 17 WATT, C.J., dissents.
NOTES
[1] Our factual recitation is generally taken from United States Bankruptcy Judge, Richard L. Bohanon's Order Requesting Answer to Certified Question, and, to some extent, from the briefs of the parties filed with this Court in June 2002 and from the bankruptcy court's record, the latter containing (among other materials) counter-summary judgment submissions of the parties that were earlier filed in the bankruptcy case. A copy of the bankruptcy court record in the adversary proceeding pending in the federal bankruptcy case [Bankruptcy Case No. 01-14249-BH (Chapter 7) and Adversary No. 01-1287-BH (United States Bankruptcy Court, Western District of Oklahoma)] was provided to this Court along with the Order Requesting Answer to Certified Question. The factual recitation is not meant to intrude upon the decision-making process of the certifying court or to imply that any facts recited are to be taken as conclusive on any issue which has arisen or may arise in the federal case. Although we must outline the factual underpinnings of the matter to place the certified question in proper perspective, it is the federal court  where the matter is pending  that must analyze the impact of our answer to the certified question based upon whatever facts it ultimately decides are pertinent to the case before that court. Brown v. Ford, 1995 OK 101, 905 P.2d 223, 226. Furthermore, beyond the scope of the certified question and, therefore, something not answered by this Court here is any priority of interest question in the involved mobile home (or proceeds from the sale thereof) between or among defendants, the bankruptcy trustee and other potential creditors of debtors. Again, such matter(s) must be assayed by the federal court based on all pertinent facts eventually revealed in the federal proceeding. We note finally it is the federal court that must make a determination as to whether summary judgment is appropriate in the case pending there. Such a determination is not the function of this Court under the Revised Uniform Certification of Questions of Law Act, 20 O.S.2001, § 1601 et seq.
[2] We note that at ¶ 3, Factual Background of the bankruptcy court's Order Requesting Answer to Certified Question the vehicle identification number (VIN) is incorrectly recited as being, "# ALCO 0696680S40117", rather than the correct # ALCA 0696680S40117. (Bolding and underlining added.) Obviously, the VIN displayed in said ¶ 3 contains a typographical error and the correct VIN is set forth at ¶ 7, Factual Background of the same order, as well as in ¶ 6 thereof.
[3] The caption we use in this case is consistent with the caption on Judge Bohanon's Order Requesting Answer to Certified Question and his Order Granting Motion to Substitute Parties, the latter filed in the Western District of Oklahoma bankruptcy case on May 18, 2004.
[4] The summary judgment submissions of the parties include documents that show other numbers than already detailed in the text, e.g. the certificate of title and title receipt contain a title number, XXXXXXXXXXXX, and the certificate of title exhibits a control number, 14047902. We note that the Rules of the Oklahoma Tax Commission (OTC), in effect in July 1996 concerning the perfection of liens on vehicles, required that a title receipt "must be issued to reflect the lien." 2001 Oklahoma Administrative Code, Title 710(OTC), Chapter 60 (Motor Vehicles), Subchapter 5 (Motor Vehicle Titles), Part 11(Liens), § 111 (Perfecting liens), subsection (e)[710:60-5-111(e) (2001 OAC); added at 9 Ok. Reg. 2151, eff. 6-12-92)]. Apparently, defendant, Green Tree Financial Servicing Corporation (Green Tree Corp.) did not notice that the title receipt failed to reflect a lien.
[5] The plaintiff, Susan Manchester (bankruptcy trustee) and defendant, Conseco Finance Servicing Corporation (Conseco) dispute on whose initiative, OTC's or Conseco's, the September 2001 amended/corrected lien entry form was filed. In our view, the dispute is irrelevant for purposes of our determination of the correct answer to the certified question. We do note, however, one way to read Conseco's June 6, 2002 brief in chief to this Court  said brief now adopted by defendant, Green Tree Servicing, L.L.C. (Green Tree, L.L.C.) as Conseco's substituted successor  is that it contends the security interest should be deemed properly perfected as of July 1996 by virtue of the corrected lien entry form that was filed in 2001. Very simply, we do not understand the certified question to be asking us whether what was done in 2001 can or should relate back to 1996, such that perfection of the security interest in the mobile home would properly be deemed to have occurred in 1996.
[6] The most recent amendments to § 1110 were made by the 49th Oklahoma Legislature in its second regular session. See 2004 Okla. Sess. Law Serv., Ch. 85, § 1. The amendments concern vehicles registered by a federally recognized Indian tribe and have no applicability to the present question before us.
[7] Title 12A O.S.2001, § 1-9-311(a)(2) provides in pertinent part:

(a) Except as otherwise provided in subsection (d) of this section, the filing of a financing statement is not necessary or effective to perfect a security interest in property subject to:
(2) another statute of this state that provides for central filing of, or that requires indication on or delivery for indication on a certificate of title of, any security interest in the property as a condition or result of perfection, including, but not limited to, Section 1110 of Title 47 ... [.]
[8] Other portions of 47 O.S.Supp.1995, § 1110 seem to point to the potential for some type of cross-indexing within the records of OTC, although it is possible all such indexing is somehow inextricably tied to the VIN. Section 1110(A)(3)(a) and (6) provided:

3. a. For each security interest recorded on a certificate of title, or manufacturer's certificate of origin, such person shall pay a fee of Ten Dollars ($10.00), which shall be in addition to other fees provided for in Section 1101 et seq. of this title. Upon the receipt of the lien entry form and the required fees with either the certificate of title or an application for certificate of title and manufacturer's certificate of origin, a motor license agent shall, by placement of a clearly distinguishing mark, record the date and number shown in a conspicuous place, on each of these instruments. Of the ten-dollar fee, the motor license agent shall retain Two Dollars ($2.00) for recording the security interest lien.
* * *
6. The lien entry form with the date and assigned number thereof clearly marked thereon shall be returned to the secured party. If the lien entry form is received and authenticated, as herein provided, by a motor license agent, such agent shall make a report thereof to the [OTC] upon the forms and in the manner as may be prescribed by the [OTC].
(Emphasis added.)
Although certain amendments have been made to § 1110 since 1996, as applicable to the present matter, the provision is essentially the same as that existing in 1996. 2004 Okla.Sess.Law Serv., Ch. 85, § 1; 2002 Okla.Sess.Laws, Ch. 417, § 2; 2001 Okla.Sess.Laws, Ch. 358, § 4; 2001 Okla.Sess.Laws, Ch. 25, § 1; 2000 Okla.Sess.Laws, Ch. 371, § 173; 1999 Okla.Sess.Laws, Ch. 92, § 3; 1996 Okla.Sess.Laws, Ch. 38, § 1.
From our review of the bankruptcy court record accompanying the bankruptcy judge's Order Requesting Answer to Certified Question, the number that appears to have been marked on the lien entry form, the application for certificate of title and on the manufacturer's certificate of origin is the lien receipt number, XXXXXXXXXA7962 (bolding and underlining added), said number not matching exactly any number on the actual certificate of title that issued. The latter contains the number (among others), XXXXXXXXXA796 7 (bolding and underlining added), which corresponds to the title receipt number. In that we do not know the extent, if any, of the use of cross-indexing by OTC of pertinent records, we cannot decide here the affect any such cross-indexing would have on the question of the perfection of the involved security interest in the mobile home. That is something the federal bankruptcy court must analyze and decide based upon whatever facts in such regard are eventually revealed in the federal proceeding.
[9] The 1991 version, 12A O.S.1991, § 9-402(8)(the provision in effect in July 1996) provided: "[a] financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading."
[10] In its June 6, 2002 brief in chief (pg.3), Conseco concedes that its predecessor in interest Green Tree Corp., "through a scrivener's error", inserted the incorrect VIN on the involved lien entry form and on the application for an Oklahoma certificate of title. Conseco's primary argument in said brief in support of its position that it substantially complied with applicable perfection requirements is that it was the motor license agent who should have caught the error, essentially by comparing the documents and that it, Conseco, was (at some later time) verbally informed by unnamed person(s) at the OTC, that had the agent followed proper procedures Green Tree Corp.'s initial scrivener's error would have been caught and corrected. Conseco's June 2002 brief to this Court (now adopted by Green Tree, L.L.C.), in effect, takes no position on whether the error in the VIN on the lien entry form and the application for a certificate of title caused the applicable documents to be filed in such a way (because of the manner in which they were indexed) that the existence of the lien would not be readily ascertainable by a search of the applicable OTC records. Conseco's argument of placing blame on the motor license agent appears without merit because, although ordinarily a secured party does not bear the risk of improper filing or indexing by a filing official (see 12A O.S.2001, § 1-9-517, which provides, "[t]he failure of the filing office to index a record correctly does not affect the effectiveness of the filed record[ ]"), an exception to this legal concept exists when it is the conduct of the secured party that leads to the error on the part of the filing officer. Liberty Nat. Bank and Trust Co. of Oklahoma City v. Garcia, 1984 OK CIV APP 29, 686 P.2d 303, 306; In re Fowler, 407 F.Supp. 799, 803 (W.D.Okla.1975); see also Chief Freight Lines Co. v. Strick Finance Co., 37 B.R. 436 (U.S.Bank.Ct.N.D.Okla.1984)(where creditor in debtor's vehicles failed to file lien entry forms and pay required fees, instead relying on debtor to accomplish perfection actions that were statutorily mandated, creditor failed to establish perfected security interest under Oklahoma law, regardless of any erroneous advice creditor obtained from state tag agent).
[11] In Central Nat. Bank. & Trust Co. of Enid v. Community Bank & Trust, 1974 OK 141, 528 P.2d 710, the second-in-time creditor made a telephone check with the County Clerk's office and determined correctly that no prior liens on the involved vehicle had been filed against a James L. Anderson, the name shown on the certificate of title. Id. at 712.
[12] In Central Nat. Bank. & Trust Co., supra note 11, this Court viewed differently an error of one digit in the VIN as an error of only minor significance because under the Uniform Commercial Code it was not necessary to so particularly describe the involved vehicle for collateral description purposes nor was indexing done by VIN at the County Clerk's office, but by debtors' names.