2006 OK CIV APP 37

**STROUD NATIONAL BANK, Stroud, Oklahoma (Wellston Branch), Plaintiff/Appellee,**

v.

**Dale OWENS, an individual, and Kirby Kyles, an individual, Defendants/Appellants.**

**No. 101,122.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Dec. 9, 2005.

Rehearing Denied Jan. 4, 2006.

Certiorari Denied April 3, 2006.

Richard James, Richard James, P.C., Stroud, OK, for Plaintiff /Appellee.

Michael D. Denton, Jr., Lon J. Darley, III, Denton Law Firm, Mustang, OK, for Defendants/Appellants.

OPINION BY ROBERT DICK BELL, Judge.

¶ 1 In this action for replevin and conversion, Defendant/Appellant Dale Owens appeals from the trial court's order imposing a lien, ordering the sale of Owens' 1995 Bobcat, awarding a monetary judgment and assessing a civil penalty, attorney fees and costs in favor of Plaintiff/Appellee Stroud National Bank, Stroud, Oklahoma (Wellston Branch). Defendant/Appellant Kirby Kyles appeals from the trial court's order assessing attorney fees and costs against Kyles and in favor of Bank. For the reasons set forth below, we affirm.

## I. Facts Relevant to Bank's Action Against Owens

¶ 2 On March 10, 2001, James E. Hooker, Jr., and Wendy L. Hooker executed a promissory note and security agreement in favor of Bank. The security agreement granted Bank a security interest in a "1996 Melroe Bobcat Model # 873 & accessories thereof, S# 14111321" (the "Subject Bobcat"). Bank's security interest in the Subject Bobcat was perfected by the filing of a UCC–1 financing statement with the County Clerk of Oklahoma County on March 13, 2001.

¶ 3 In early September, 2001, Owens purchased from the Hookers a 1995 Melroe Bobcat Model # 873 bearing serial number 514111321. Owens traded a 1966 Ford Mustang for the Bobcat. Less than a year later, Owens re-purchased the Mustang from the Hookers for $9,000.00. In September of 2002, Owens purchased a Model # 863 Bobcat from the Hookers for $2,500.00. Owens testified he did not check the UCC records prior to purchasing either Bobcat. Wendy Hooker testified she specifically informed Owens the Model # 873 Bobcat was mortgaged.

¶ 4 The Hookers defaulted on their promissory note to Bank, became insolvent and eventually filed for and received a discharge in bankruptcy. On April 17, 2003, Bank filed a replevin action against Owens to repossess the Subject Bobcat. A temporary restraining order (TRO) was entered against Owens the same day. The writ of replevin was issued May 2003, and served upon Owens. Owens filed an answer, counterclaim and cross-claim denying that he was in possession of the Subject Bobcat. Owens also requested the trial court grant him sole and exclusive ownership of the Model # 873 Bobcat, which he claimed was not the Subject Bobcat.

¶ 5 Bank later filed a second amended petition alleging Owens wrongfully and with reckless disregard caused the depreciation in the value of the Subject Bobcat from $9,000.00 to $1,666.00 by removing its engine and bucket. Bank sought punitive damages, attorney fees and costs, together with either (1) the delivery of the Subject Bobcat in its present condition and a judgment against Owens for $7,334.00 as special damages or (2)

judgment in the amount of $9,000.00. Thereafter, Bank filed a motion for summary adjudication on the issue that the description in the filed financing statement was legally sufficient to give actual and constructive notice to Owens that Bank had a security agreement in the Model # 873 Bobcat he purchased from the Hookers. The trial court sustained the motion and the case proceeded to trial on the remaining issues.

¶ 6 At trial, Owens contended the Model # 873 Bobcat he owned was not subject to the order of delivery because it had a different year of manufacture and a different serial number than the Subject Bobcat. Owens also claimed that when he acquired the Bobcat, it was not in working order, its engine was "blown" and it was missing the bucket. Owens testified he completely rebuilt the engine and installed a bucket at his own expense. Therefore, Owens reasoned, he was entitled to deliver the Bobcat to Bank in the same condition it was in when he acquired it—without an engine and bucket. Wendy Hooker testified the Model # 873 Bobcat was in good working order when it was sold to Owens. (She testified the Model # 863 Bobcat the Hookers sold to Owens in 2002 did have a "blown motor" at the time of sale). An expert witness opined the Model # 873 Bobcat would have been worth $10,690.00 with an engine and a bucket. Without the engine, the Bobcat was worth only $1,666.00.

¶ 7 The court rendered its decision from the bench in favor of Bank on May 20, 2004. The journal entry of judgment, entered July 26, 2004, found (1) the reasonable fair cash market value of the Model # 873 Bobcat at the time of Owens' possession was $9,000.00, (2) Owens had actual knowledge the Bobcat was mortgaged, and the description of the Bobcat on the UCC–1 was sufficient to put anyone on notice of Bank's lien, (3) Owens refused to permit Bank to take possession of the Bobcat after demand, and (4) Owens willfully removed the motor from the Bobcat, thereby materially reducing its value, notwithstanding that a restraining order was entered and served on Owens prohibiting him from injuring or damaging the Bobcat in his possession and that his actions were in reckless disregard of Bank's rights and a

willful violation of the court's restraining order.

■ ¶ 8 The court's journal entry granted Bank a judgment against Owens for the sum of $14,000.00 ($9,000.00 for the value of the Bobcat and a civil penalty of $5,000.00 for Owens' willful and wrongful conduct).[1] The court imposed a lien on the Bobcat and ordered Owens to sell the Bobcat and apply the sales proceeds to the monetary judgment in favor of Bank. The court reserved the question of attorney fees for a later hearing. After conducting that hearing, the trial court awarded Bank $5,800.00 in attorney fees and $425.01 for costs. Owens appeals from said judgments.

## II. Facts Relevant to Bank's Action Against Kyles

¶ 9 The Hookers also granted a security interest to Bank in a 1996 "6T–2 Trailer" and accessories (the Trailer). Bank's security interest in the Trailer was also perfected by the filing of a UCC–1 financing statement with the County Clerk of Oklahoma County on March 13, 2001. At some point in time, Kyles obtained possession of the Trailer from the Hookers. Kyles did not check the UCC records prior to accepting the Trailer.

¶ 10 When the Hookers defaulted on their promissory note, Bank sought unsuccessfully to obtain the Trailer from Kyles. A writ of replevin was issued and served upon Kyles, and the sheriff replevied the Trailer on May 2, 2003. Bank filed an amended petition to add a claim for costs and attorney fees incurred by Bank in executing the replevin against Kyles. Bank initially obtained a default judgment against Kyles which was subsequently vacated with Bank's consent. Numerous pleadings and objections ensued between the parties regarding Bank's request for attorney fees and costs. The trial court granted Bank's motion for summary judgment against Kyles on Bank's claim for attorney fees subject to presentation of time records at a hearing. The trial court found "this was an action for replevin wherein it

became necessary for the plaintiff to file suit in order to recover collateral. If Defendant Kyles claimed no interest in the collateral, then no suit would have been necessary."

¶ 11 Bank's counsel thereafter presented its time records and Kyles filed several pleadings opposing the award of attorney fees. Ultimately, the trial court awarded judgment to Bank against Kyles for the amount of $1,418.75 in attorney fees and $392.00 in costs. From said judgment, Kyles appeals.

## III. Appellate Issues Urged by Owens

■ ¶ 12 Owens' first and second propositions of error allege Bank's security agreement and financing statement were ineffective as a matter of law to grant and perfect a security interest in the Subject Bobcat because neither document reasonably identified the collateral due to seriously misleading errors and omissions. Owens contends the single digit error in the vehicle identification number (VIN) and the one year error in the stated model year of the Bobcat were seriously misleading. He also contends such errors failed to meet the requirement that the description of the collateral "reasonably identify the items which are subject to the security interest."

¶ 13 As support for his arguments, Owens cites *In re Gregory*, 2004 OK 57, 97 P.3d 639. There, the Supreme Court held a security interest would not be properly perfected under the circumstances of that case due to a one-digit error in the VIN listed on a lien entry form and a certificate of title application. The Court based its ruling in part on the assumption that the existence of the lien was not readily ascertainable from a reasonable search of the Oklahoma Tax Commission (OTC) records which filed/indexed solely according to a vehicle's VIN at the time of submission. *Id.* at ¶ 12, 97 P.3d at 644.

¶ 14 We find Owens' reliance on *Gregory* is misplaced. Here, the one-digit error in the

---

1. The court's journal entry also granted Bank an *in rem* judgment against the Hookers for $7,124.05 plus interest. "A judgment *in rem* creates no personal liability but operates only on the property that is the subject of litigation." *Sooner Fed. Sav. and Loan Ass'n v. Oklahoma Cent. Credit Union*, 1989 OK 170, ¶ 17, 790 P.2d 526, 530.

VIN and the wrong date listed on the Bobcat financing statement are much less significant than the error in *Gregory*. First, Owens did not rely upon a search of the OTC records. In fact, Owens made no search of any records, notwithstanding that Owens was verbally informed of Bank's lien upon the Subject Bobcat. Moreover, had Owens searched the UCC records, where the indexing is done by the debtor's name, he would have readily ascertained Bank's prior lien upon the Model # 873 Bobcat sold to him by the Hookers.

¶ 15 Under the facts of this case, we deem the tenets expressed in *Central Nat'l Bank & Trust Co. of Enid v. Community Bank & Trust Co. of Enid*, 1974 OK 141, 528 P.2d 710, apply. There, the Supreme Court viewed a one-digit error in a VIN to be of minor significance because under the UCC it was not necessary to describe the vehicle for collateral description purposes with exactitude. A property description is sufficient if it reasonably identifies the property and any errors are not seriously misleading. *Id.* at ¶¶ 5–6, 528 P.2d at 712. The description of the Model # 873 in the present financing statement reasonably identified the Subject Bobcat. The one-digit error in the VIN and erroneous date listed for the Bobcat were not seriously misleading because the errors did not lead to a mis-indexing such that Owens could not find the existence of the lien through a reasonable diligent inquiry with the UCC office and its records. Accordingly, Owens' first and second propositions of error are rejected.

¶ 16 Owens asserts in his third and fourth propositions that the trial court abused its discretion in reforming Bank's security agreement and the financing statement to impose a lien on the 1995 Model # 873 Bobcat. We find no error. Equity has the jurisdiction to reform written instruments to accurately reflect the real agreement between contracting parties when there is a mutual mistake. 4 *Pomeroy's Equity Jurisprudence and Equitable Remedies*, § 1376 at 2725 (3d ed.1905).

"Reformation of a written instrument will be decreed when the words that it contains do not correctly express the meaning that the parties agreed upon, as the court finds to be convincingly proved." *Corbin on Contracts*, § 614 (1960). Reformation is a remedy to make a written contract conform to the antecedent expressions on which the parties based their agreement, and insofar as the written document differs from these antecedent agreements, it will be reformed. *Id.*

*Thompson v. Estate of Coffield*, 1995 OK 16, ¶ 10, 894 P.2d 1065, 1067. The evidence is clear that both Bank and the Hookers intended the security agreement and financing statement to cover the 1995 Model # 873 Bobcat.

¶ 17 For his fifth proposition of error, Owens contends the trial court abused its discretion in assessing compensatory damages of $9,000.00 because there was no evidence Owens committed conversion. We initially note the trial court's judgment did not specify whether the compensatory damages were awarded for Bank's cause of action for conversion, its cause of action for replevin or some combination thereof. Assuming for purposes of this discussion the entire $9,000.00 award was for Bank's conversion claim, we reiterate that conversion is an action at law. *Warren v. Century Bankcorporation, Inc.*, 1987 OK 14, ¶ 15, 741 P.2d 846, 852. "[I]n an action at law, the findings of fact by the trial court have the same force and effect as the verdict of a jury, and those findings will not be disturbed upon appeal where there is any evidence reasonably tending to support the findings." *Mooney v. Mooney*, 2003 OK 51, ¶ 48, 70 P.3d 872, 881. "Conversion is any act of dominion wrongfully exercised over another's personal property inconsistent with his rights therein." *Roberson v. PaineWebber, Inc.*, 1999 OK CIV APP 17, ¶ 17, 998 P.2d 193, 200. *Accord Beshara v. Southern Nat'l Bank*, 1996 OK 90, ¶ 32, 928 P.2d 280, 289–90. The instant record reveals Owens—with actual knowledge of Bank's security interest, the ongoing replevin action and the restraining order—intentionally and wrongfully damaged the Subject Bobcat by removing the engine and bucket therefrom. This is sufficient evidence to support the trial court's factual findings of conversion.

¶ 18 In his sixth proposition of error, Owens argues the trial court could only award a money judgment to Bank if possession of the Bobcat could not be delivered by Owens. Notwithstanding that the entire $9,000.00 monetary judgment may have been awarded for the conversion action, 12 O.S.2001 § 1580 provides "a cumulative or supplemental remedy in favor of one who succeeds in a replevin action." *Brook v. James A. Cullimore & Co.*, 1967 OK 251, ¶ 4, 436 P.2d 32, 34.

> By the terms of this enactment, if the losing party has retained possession of the property ..., the successful litigant is entitled to a judgment not only for his costs and for the recovery of possession, but also, if he chooses, to an alternative money judgment for the value of the property. In the event possession cannot be given for any reason, the prevailing party may then proceed to enforce his money judgment.

*Id.* The litigant on whom the remedies set forth in § 1580 are conferred "may elect which course to pursue." *Brook* at ¶ 4, 436 P.2d at 34. The trial court's judgment awards Bank a money judgment for the value of the Subject Bobcat. It does not, contrary to Owens' intimation, also award Bank a judgment for Bank's possession of the same.

¶ 19 As his seventh proposition, Owens alleges the trial court abused its discretion by assessing damages of $9,000.00 in the replevin action because the unpaid balance of the Hookers' promissory note was only $7,124.05. Again, the judgment did not specify to which cause of action the damage award applied. Although a replevin action is primarily concerned with the possession of personal property, "it is sufficiently flexible to authorize a settlement of all the equities between the parties arising from or growing out of the main controversy." *Pettit v. Rich*, 1965 OK 45, ¶ 11, 400 P.2d 156, 158, *quoting M.B. Thomas Auto Sales v. Pickle*, 1956 OK 339, 305 P.2d 550. The damage award assessed against Owens arose from the main controversy regarding possession of the Bobcat. Bank's judgment against Owens was not limited to the amount of money owed to Bank by the Hookers.

¶ 20 Owens argues for his eighth proposition of error that the trial court abused its discretion by assessing damages of $9,000.00 because that amount was the value paid for the repurchase of the 1966 Ford Mustang, not the fair market value of the subject Bobcat at the time Bank's replevin action was commenced. The measure of damages to be awarded in a conversion case is set forth in 23 O.S.2001 § 64, which provides in relevant part that the detriment caused by the wrongful conversion of personal property is:

1. The value of the property at the time of the conversion with the interest from that time; or,

2. Where the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict, without interest, at the option of the injured party; ...

¶ 21 In the present case, there was sufficient evidence to support the trial court's finding that the value of the Subject Bobcat, at the time of conversion, was the value of the 1966 Ford Mustang which Owens originally traded for the Bobcat and later repurchased for $9,000.00. We add the evidence would also have supported a damage award of $10,690.00, the value assigned the Bobcat by Bank's expert witness. We find no error.

¶ 22 Owens' ninth proposition of error contends the trial court abused its discretion by failing to adjust the equities between Owens and Bank as they stood at the time of the rendition of the judgment. The essence of Owens' argument is his contention that the Bobcat had an inoperable motor and no bucket when he purchased it, and that he enhanced the value of the Bobcat by more than $10,000.00. Thus, Owens argues, the judgment unfairly penalized him. The fallacy of this argument is that the trial court implicitly found the Bobcat was in good working order when it was purchased by Owens. As we concluded above, the evidence supports the trial court's factual findings of conversion.

¶ 23 Owens' tenth and eleventh propositions of error contend the trial court erroneously failed to restrict the evidence,

exhibits and issues to those described in the trial court's Pre-trial Conference Order. Specifically, Owens argues Plaintiff's Exhibit Numbers 2, 3 and 6, and any evidence regarding Owens' knowing and willful damage to the Bobcat and/or his violation of the TRO should not have been admitted because they were not mentioned in the Pre-trial Conference Order. Plaintiff's Exhibits 2 and 3 were bank records admitted to show the amount the Hookers owed on their Bobcat note. Plaintiff's Exhibit 6 was a carbon copy of a check written by the Hookers to their insurance company to insure the 1966 Mustang. The check supported Mrs. Hooker's account of when the Subject Bobcat was traded to Owens for the Mustang.

¶ 24 Rule 5(I) of the *Rules for District Courts of Oklahoma,* 12 O.S.2001, Ch. 2, App. 1, states the contents of a pretrial order "govern the trial of the case unless departure therefrom is permitted by the Court to prevent manifest injustice." In this respect, 12 O.S.2001 § 2015 provides in relevant part:

B. AMENDMENTS TO CONFORM TO THE EVIDENCE. When issues not raised by the pleadings or by the pretrial conference order, where the order has superseded the pleadings, are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings or the pretrial conference order. Such amendment as may be necessary to cause the pleadings or the pretrial conference order to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings or the pretrial conference order, the court may allow the pleadings or the pretrial conference order to be amended and shall do so freely when the presentation of the merits of the action will be served thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

We also note that "[a]llowing or denying admission of evidence rests in the sound discretion of the trial court." *Jordan v. General Motors Corp.,* 1979 OK 10, ¶ 12, 590 P.2d 193, 196. "Decisions regarding relevance of evidence and its alleged prejudice to the other party will not be overturned absent an abuse of discretion." *Mills v. Grotheer,* 1998 OK 33, ¶ 3, 957 P.2d 540, 541.

¶ 25 With respect to Plaintiff's Exhibit Numbers 2 and 3, Owens has failed to allege, much less prove, that he was prejudiced by the introduction of these documents which merely showed the amount of money the Hookers owed on their note. And while Plaintiff's Exhibit Number 6 tended to discredit Owens' version of when he acquired the Subject Bobcat, the exhibit was relevant under 12 O.S.2001 § 2401, it served to promote "the presentation of the merits of the action," and it did not unfairly prejudice the defense. *See* 12 O.S.2001 § 2403. As the Court stated in *State ex rel. Hettel v. Security Nat'l Bank & Trust Co. in Duncan,* 1996 OK 53, ¶ 23, 922 P.2d 600, 608–9, the rules of pleading allow courts to focus their "attention on the substantive merits of a dispute rather than upon procedural niceties." No abuse of discretion has been shown.

¶ 26 The record reveals that the evidence regarding Owens' knowing and willful damage to the Bobcat and/or his violation of the TRO was either admitted without objection or elicited by defense counsel. Owens himself testified he removed the Bobcat's engine and bucket after being served with the TRO. This Court will not review allegations of error that were not first presented to the trial court for resolution. *Bane v. Anderson, Bryant & Co.,* 1989 OK 140, ¶ 24, 786 P.2d 1230, 1236. Further, "[p]arties to an action on appeal are not permitted to secure a reversal of a judgment upon error which they have invited, acquiesced or tacitly conceded in, . . ." *Samedan Oil Corp. v. Corporation Comm'n of State of Okla.,* 1988 OK 56, ¶ 7, 755 P.2d 664, 668. In so far as Owens' proposition of error attacks the inclusion of a $5,000.00 civil penalty in the judgment, we note such is permitted under the

replevin statutes, specifically 12 O.S.2001 § 1571.1.

¶ 27 For his twelfth proposition of error, Owens contends the trial court's imposition of the $5,000.00 civil penalty is a nullity because the court did not follow constitutional and statutory requirements for proceedings for indirect contempt. As stated above, § 1571.1 expressly permits a civil penalty for willful and knowing damage to "property in which there exists a valid right to issuance of an order of delivery." The assessed penalty was not imposed for indirect contempt of court and the trial court made no such findings.

¶ 28 Owens also urges the trial court's $5,000.00 award was grossly excessive and an abuse of discretion. Section 1571.1 provides for a civil penalty "double the amount of damage done to the property...." Because the amount assessed by the trial court falls, under the facts of this case, well within the parameters of the statute, we find no abuse of discretion.

¶ 29 For his fourteenth proposition of error, Owens contends the trial court's imposition of a civil penalty was an abuse of discretion because the underlying conversion action was unsubstantiated. Again, the trial court's factual findings of conversion are supported by the evidence.

¶ 30 Owens' fifteenth proposition maintains the trial court abused its discretion in awarding costs and attorney fees to Bank because the award was made prior to the entry of a judgment. This argument was not raised in the trial court. "Parties on appeal are limited to the issues presented at the trial level." *Jones v. Alpine Inv., Inc.,* 1987 OK 113, ¶ 11, 764 P.2d 513, 515. *See* also *Bane,* 1989 OK 140 at ¶ 24, 786 P.2d at 1236. Accordingly, this proposition is rejected.

¶ 31 Owens' final proposition of error contends the trial court abused its discretion in awarding costs and attorney fees to Bank because, he claims, the award was made without an adversary hearing or evidence to support the award under the criteria set forth in *State ex rel. Burk v. City of Okla. City,* 1979 OK 115, 598 P.2d 659. The record reveals Bank filed a motion for attorney fees

and costs with a verified itemization of such fees and costs attached thereto. Owens filed a response in which he contested the request. The trial court awarded the full amount of attorney fees sought by Bank, but reduced Bank's requested cost figure by approximately fifty percent. In its journal entry of judgment, the trial court specified its order was being issued "after a hearing conducted by the Court...." No transcript of said hearing was included in the record.

¶ 32 This Court will not disturb the trial court's award of attorney fees absent a showing of abuse of discretion. *Tibbetts v. Sight 'n Sound Appliance Centers, Inc.,* 2003 OK 72, ¶ 3, 77 P.3d 1042, 1046. "It is the duty of the appealing party to procure a record that is sufficient to obtain the corrective relief sought." *Chamberlin v. Chamberlin,* 1986 OK 30, ¶ 7, 720 P.2d 721, 724. "Legal error may not be presumed in an appellate court from a silent record. The opposite is true. Absent a record showing otherwise, this court presumes that the trial court did not err." *Hamid v. Sew Original,* 1982 OK 46, ¶ 6, 645 P.2d 496, 497. Because no transcript of the attorney fee hearing appears in the instant record, we must presume the trial court's judgment was based upon sufficient evidence. Owens has failed to demonstrate the trial court abused its discretion. On the basis of the foregoing, the judgments of the trial court entered against Owens are affirmed.

IV. Appellate Issues Urged by Kyles

¶ 33 Kyles raises three propositions of error on appeal, all of which attack the trial court's assessment of attorney fees and costs against him. Briefly, Kyles asserts the trial court abused its discretion in awarding attorney fees because (1) the matter was decided in a summary proceeding, (2) there was no evidentiary support presented in an adversarial proceeding and (3) the statute which allows for attorney fees is merely permissive. We reject all three arguments.

¶ 34 As stated above, this Court will not disturb the trial court's award of attorney fees absent a showing of abuse of discretion. *Tibbetts,* 2003 OK 72 at ¶ 3, 77 P.3d at 1046.

Title 12 O.S.2001 § 1580 provides that in an action to recover the possession of personal property, "[t]he judgment rendered in favor of the prevailing party ... may include a reasonable attorney fee to be set by the court, to be taxed and collected as costs." Because this statute is merely permissive and not mandatory, Kyles argues the trial court should not have awarded fees because of "the equities of the case." Specifically, Kyles contends he was merely a stakeholder with regard to the Trailer and that he never asserted any ownership over the property once Bank demonstrated its proof of title.

¶ 35 As the trial court correctly noted, Bank's lawsuit to gain possession of the Trailer would not have been necessary but for Kyles' actions. Kyles acquired the Trailer without searching the UCC records, which would have shown Bank's superior interest in the property, and he refused to respond to Bank's initial demand for the Trailer. He sought vacation of Bank's entire initial default judgment, including Bank's right to possession of the Trailer, rather than challenging only the award of attorney fees. And, in his answer to Bank's amended petition, Kyles specifically denied he had any obligation to permit Bank to take possession of the Trailer. We find nothing inequitable in the trial court's fee award.

■■■■■ ¶ 36 With respect to his first proposition of error, Kyles cites no authority—and we find none—in support of his argument that attorney fees may not be awarded in a case decided by summary process. When considering the language "prevailing party" in a fee statute, "[t]he operative factor ... is *success*, ..." *Professional Credit Collections, Inc. v. Smith*, 1997 OK 19, ¶ 12, 933 P.2d 307, 311 (emphasis in original). A final judgment in an action decided by summary process is no less a judgment than one rendered after trial on the merits. Both judgments conclusively adjudicate the respective rights of the parties. Bank was the successful party in its action to recover possession of the Trailer, a fact evinced by the trial court's judgment. Bank was the "prevailing party" and entitled to an attorney fee award under § 1580.

■■■■ ¶ 37 Lastly, we reject Kyles' argument that the trial court abused its discretion by awarding attorney fees and costs in the absence of an adversarial proceeding. Bank's motion for summary judgment included a request for attorney fees and costs. In its judgment, the trial court held Bank was entitled to recover fees and costs against Kyles "which the Court will award upon presentation of time records at a hearing on the same." Bank's counsel thereafter filed a motion with attached itemized statement detailing attorney time and costs expended prosecuting the case. Kyles filed a response to the pleading, asserting the "equities of the case" defense discussed above, and filed a supplemental response in which he attacked a number of the Bank's time entries. At a hearing on Bank's motion conducted February 4, 2004, Kyles was granted permission to file an additional brief on the subject. Kyles filed his supplemental brief on February 13, 2004.

¶ 38 The trial court's order setting fees and costs stated:

> The time record, submitted together with the hearing held in conjunction with it show that the plaintiff is entitled to recover the sum of $1,418.75 attorney fees together with $392.00 cost which is reasonable.

Bank thereafter filed a motion for the trial court to re-enter its fee and cost order wherein Bank's counsel candidly admitted he did not attach a verification to the original itemization. The verified itemization attached to the motion to re-enter was identical to the one originally submitted by Bank's counsel. At a hearing on the motion, Bank's attorney suggested the trial court conduct a hearing to alleviate any concerns regarding whether Bank had complied with the *Burk* requirements. The trial court denied the motion.

■■■■ ¶ 39 The gist of Kyles' claim appears to be that the trial court should have held an evidentiary hearing before awarding fees and costs. We first note that a hearing was held on February 4, 2004. Although no transcript of the hearing is included in the appellate record, the trial judge was apparently satisfied—as demonstrated by its order setting

fees and costs—that Bank adequately proved its entitlement to the amounts requested. We also recognize that Kyles was given numerous opportunities to contest the fee application in both briefs and in hearings before the court. We hold Kyles has failed to demonstrate the trial court abused its discretion. Moreover, the record reveals Kyles specifically objected to Bank's request for the trial court to conduct an evidentiary hearing. "Parties to an action on appeal are not permitted . . . to assume an inconsistent position from that taken in the trial court." *Samedan Oil Corp.*, 1988 OK 56 at ¶ 7, 755 P.2d at 668. Kyles' complaint on appeal regarding the lack of an evidentiary hearing is inconsistent with the position he took below. Accordingly, the judgment entered against Kyles is affirmed.

### V. Bank's Request for Appeal– Related Attorney Fees

¶ 40 Bank seeks appeal-related attorney fees with respect to both appellants. "Whenever there is statutory authority to award attorney fees in the trial of a matter, additional fees may be allowed (to the prevailing party) for legal services rendered in the appellate court." *Sisney v. Smalley*, 1984 OK 70, ¶ 20, 690 P.2d 1048, 1051. Bank's motion for appeal-related attorney fees against Owens is granted. Its request for such fees is denied as to Kyles because Bank did not comply with 12 O.S.2001 § 696.4(c).

¶ 41 AFFIRMED AND REMANDED.

ADAMS, P.J., and MITCHELL, J., concur.